City of Chicago, a Municipal Corporation, Plaintiff-Appellee, v. Charles H. Fritz and Industrial Scrap Material Corporation, an Illinois Corporation, Defendants-Appellants; Village of Riverdale and Riverdale Area Property Owner's Association, City of Blue Island, and Baltimore and Ohio Railroad Company, Intervening Petitioners-Appellees.

Gen. No. 48,671.

First District, Second Division.

July 24, 1962.

Morris S. Bromberg and Benjamin Bromberg, of Chicago (Irving Goodman and Julia M. Hagerty, of counsel), for appellants.

John C. Melaniphy, of Chicago (Sydney R. Drebin and Harry H. Pollack, of counsel, of Chicago), for plaintiff-appellee; Herbert F. Zornow, John H. Gobel and Paul R. Schreiber, of Chicago, for intervening petitioners-appellees.

MR. PRESIDING JUSTICE BRYANT delivered the opinion of the court:

This appeal is taken from a decree of the Superior Court finding defendants' use of a certain tract of land and operation of a dump to be a nuisance and a hazard, and permanently restraining and enjoining defendants from using the land for the purpose of dumping, piling, accumulating or burning garbage or other refuse on the land. The land has been in continuous use as a

dump for over thirty years and is located in an unincorporated area of Cook County at 138th Street and Racine Avenue, and is within one mile of the Chicago city limits. The complaint filed in chancery by the City of Chicago on December 29, 1960 alleged that defendants' use of its land constituted a hazard to the health and safety of the residents of Chicago and violated Section 466a of the Illinois Criminal Code. Ill Rev Stats 1959, c 38 § 466a (now transferred to c 100½ § 27). The complaint was amended on July 31, 1961 to include section 99.3 of the Municipal Code of Chicago. The answer to the complaint denied generally the allegations. On February 23, 1961, the case was referred to a Master for hearing. Shortly thereafter petitions to intervene were filed by the Village of Riverdale, the Riverdale Area Property Owner's Association, The City of Blue Island and the Baltimore and Ohio Chicago Terminal Railroad Company (hereinafter referred to as the B. & O.).

The Master's report found that defendants' dump was located in an unincorporated area in Cook County, Illinois, within one mile of the corporate limits of the City of Chicago, Village of Riverdale, and City of Blue Island; that defendants' dump was used as a dump for the deposit of garbage, refuse, rubbish, chemicals, sludge, waste material, and other substances collected from various sources as alleged in the complaint and the intervening petitions; that the defendants, by admission of defendant Charles H. Fritz, have taken in the aforesaid matter which originated in and was collected from the City of Harvey, Village of Lansing, Village of South Holland, Village of Dixmoor, Village of Tinley Park, as well as from various industries, scavengers, and private sources, and that the defendants have burned the aforesaid matter for the purpose of disposing of same; that as a result of such burning, clouds of dense black smoke were blown from defend-

ants' dump into Chicago and Riverdale, and over and into the yards of the B. & O.; that such burning has resulted in a smoke or haze and a nauseous odor of burning garbage and chemicals permeating an area within a radius of two miles or more of defendants' dump; that said smoke, haze and nauseous odors have deprived the residents of Chicago, Riverdale and Riverdale Area Property Owner's Association of the comfortable and peaceful use and enjoyment of their properties, and has also interfered with and restricted the operations of the B. & O. yards lying in part immediately north of and adjacent to the north line of defendants' dump; that in addition to smoke and odors from defendants' dump, ashes and particulate matter from defendants' dump are blown onto the premises of the residents of Chicago, Riverdale, and the B. & O.; that as a result thereof such residents and employees of the B. & O. have suffered great annoyance and discomfort, and the use of their premises has been greatly impaired; that the smoke from defendants' dump has obstructed the vision of the public using 138th Street and other public streets in the vicinity of defendants' dump; that such smoke has made driving conditions on such streets dangerous; that defendants' dump constituted a nuisance and hazard to the health of the residents of Chicago, Riverdale, and Riverdale Area Property Owner's Association; that defendants' dump violates section 466a of the Illinois Criminal Code because it is within one mile of the corporate limits of Chicago, Riverdale and Blue Island; that defendants' dump constituted a nuisance and a hazard in the operation of the B. & O. yards because of the smoke, nauseous odors, ashes and particulate matter which blows from defendants' dump onto the B. & O. premises; that the allegations have been proven and that the equities are with the plaintiff and intervening petitioners; that the plaintiff and intervening petitioners are entitled

461

to an order requiring the defendants forthwith to remove from their dump or to cover forthwith all garbage, refuse, rubbish, chemicals and sludge and waste materials or other foreign substances on said dump, and to cease and desist from burning such matter; and that defendants be perpetually restrained from using said premises as a garbage or refuse dump and from dumping or receiving for dumping, piling, accumulating, burning or scattering garbage, refuse, rubbish, chemicals, sludge, waste materials, or other foreign substances.

The defendants' objections to the Master's report were overruled and allowed to stand as exceptions. On November 14, 1961, the chancellor entered the decree herein, overruling the defendants' exceptions and approving the Master's report, and granted the injunction recommended by the Master.

■ The Abstract of Record in the instant case covers 289 pages and the report of proceedings covers 2706 pages. Sixty-six witnesses testified before the Master: forty-one for plaintiffs, and twenty-five for defendants. Numerous pictures and exhibits were admitted into evidence. It would be difficult and of no advantage to summarize the entire contents of the report of proceedings. After reviewing the evidence, we think it is quite clear from the testimony and exhibits that defendants' dump is full, that garbage and refuse is piled high above the ground and that there have been numerous fires and much smoke that constitute a hazard and a nuisance to the public. Although defendant Fritz denied in his testimony that he had to burn the refuse, this was contradicted by affidavits filed in this court in support of defendants' repeated motions for a supersedeas. Fritz stated in these affidavits that he could not operate the dump without burning because the dump was full.

462

A few examples of plaintiffs' evidence should suffice to give color to the case, showing the facts upon which the case rests, and why defendants' dump constituted a nuisance. Charles Spoo, plaintiffs' witness who worked for 20 years for the B. & O. testified as follows: that defendants' dump burned seven days a week; that about fifty trucks a day dumped garbage and that chemicals and septic tank waste were also dumped there; that the stench from the chemicals "can knock anybody down within a half mile" of the dump; that the garbage in the dump was burned on a 24-hour basis; that on March 27, 1961, he saw flames in the dump shoot hundreds of feet into the air, that the flames were caused by magnesium burning, and that the magnesium smoke would rise hundreds of feet in the air and then explode; that on said date and whenever the wind blew towards Chicago he smelled odors from the dump in Chicago; that on March 27, 1961, there were 20 fires burning in various parts of the dump; that he called the State Fire Marshal; that he had to change his clothes practically every day because of odors from the dump; that the upholstery in his automobile reeked from the smoke and stench from the dump; that the dump was overrun with rats; that he saw fires in the dump every day since March 27th; that when he was about 600 feet from the fires in the dump, the smoke was so thick that he could not see his hand in front of his face; that he saw thousands of rats in the dump; that every day he saw fifty to a hundred rats there; that when he drove near the dump, his life was in danger because the smoke and smog from the dump was so thick that he had to slow down to a standstill on 138th Street; that when he operated his engine for the B. & O., his life was in danger because burning papers and embers from the dump got into the cab of his engine and almost set him on fire;

that, as far as he knew, no one else in the vicinity was burning anything except the dump, which burned fifty truckloads of garbage every day.

Charles K. Cook, Chief of Police of Riverdale, testified: that garbage was burned in the dump, that on April 15, 1961 he issued a summons to defendant Fritz because of the burning garbage in the dump; that in the last five years he received sixty-one complaints about burning and smoke from the dump; and that on December 28, 1956 Fritz called him because the fire at the dump was out of control; and that the operation of the dump was mostly above ground except for one or two acres in the northeast corner.

■ Defendants summarize this case as presenting two principle issues: 1. Is the operation of defendants' dump a nuisance in law or fact under any of the criteria, rules or standards established either by common law or by any statute or ordinance in the State of Illinois? 2. Did the plaintiff or any of the intervenors have the right to institute or pursue this action? We will initially dispose of defendants' second point, since it is beyond doubt that plaintiff has the right to maintain this action by virtue of the relevant provisions of the Illinois Municipal Code. Ill Rev Stats 1961, ch 24, §§ 11–60–2, 11–42–9, 1–1–5. Section 11–60–2 provides:

> "The corporate authorities of each municipality may define, prevent, and abate nuisances." (Formerly section 23–61 of Revised Cities and Villages Act.)

Section 11–42–9 provides:

> "The corporate authorities of each municipality may prohibit any offensive or unwholesome business or establishment . . . within the distance of one mile beyond the municipal limits."

464

Section 1–1–5 provides:

"The corporate authorities of each municipality may exercise jointly, with one or more other municipalities, all of the powers set forth in this Code unless expressly provided otherwise."

Section 99–3 of the Municipal Code of Chicago provides:

"In all cases where no provision is herein made defining what are nuisances and how the same may be removed, abated, or prevented, in addition to what may be declared such herein those offenses which are known to the common law of the land and the statutes of Illinois as nuisances may, in case the same exist within the city limits or within one mile thereof, be treated as such, and proceeded against as is provided in this code, or in accordance with any other provision of law."

■■ ■■ Municipal corporations may call upon a court of equity for assistance to abate nuisances. City of Pana v. The Central Washed Coal Co., 260 Ill 111, 123, 102 NE 992. The fact that the nuisance is a violation of criminal laws will not bar equitable interference if other facts afford a basis for equitable jurisdiction, 17 McQuillin, Municipal Corporations 297, 298 (3rd ed 1950), and the facts presented here clearly afford such a basis.

■■ As to the merits of the injunction itself, defendants' dump is both a statutory public nuisance that violates the Criminal Code of Illinois and a common law public nuisance, and the Chancellor properly abated it. Section 221 of the Criminal Code (Ill Rev Stats 1961, ch 100½, § 26) provides:

465

"It is a public nuisance:

1.  To cause or suffer . . . any offal, filth or noisome substance to be collected, deposited or to remain in any place, to the prejudice of others.

8.  To erect, continue or use any building or other place for the exercise of any trade, employment or manufacture, which, by occasioning noxious exhalations, offensive smells or otherwise, is offensive or dangerous to the health of individuals, or of the public."

Section 221a of the Criminal Code provides:

"It is unlawful for any person to dump or place any garbage or other offensive substance within the corporate limits of any city, village or incorporated town other than (1) the city, village or incorporated town within the corporate limits of which, such garbage or other offensive substance shall have originated, or (2) a city, village or incorporated town which has contracted with the city, village or incorporated town within which the garbage has originated, for the joint collection and disposal of garbage; nor shall any such garbage or other offensive substance be dumped or placed within a distance of one mile of the corporate limits of any other city, village or incorporated town.

"Any person violating any provisions of this section is guilty of a misdemeanor and upon conviction shall be fined not less than one hundred dollars nor more than five hundred dollars."

■ The purpose of this statute is to protect the health and welfare of the public by controlling the dumping of garbage or other offensive substances. County of Cook v. Triem Steel & Processing, Inc., 19 Ill App2d 126, 129, 153 NE2d 277. The Triem case

holds that no garbage or other offensive substances can be dumped by anyone, including municipalities, within a distance of one mile of any other municipality.

■ Defendants' contention that the statute and ordinances cannot be enforced in a chancery action because they are of a criminal nature is without merit. It has long been recognized that a court of equity has jurisdiction where the enforcement of the criminal law is incidental to the general relief sought. Village of Spillertown v. Prewitt, 21 Ill2d 228, 171 NE2d 582; Stead v. Fortner, 255 Ill 468, 99 NE 680. See also People v. Billburg, 175 Ill App 136, and Cella v. People, 112 Ill App 376. Since the facts presented here justify equitable intervention, an injunction may issue even though the conduct objected to is also a crime, and the dumping constitutes a public nuisance which equity will abate.

■ There is no general rule applicable in all cases for determining when offensive odors constitute a common law nuisance. Each case must be decided upon its own peculiar facts, taking into consideration the location and all surrounding circumstances. City of Pana v. The Central Washed Coal Co., supra; 39 Am Jur, Nuisances § 59. A business which is lawful in itself may become a nuisance either because of the locality in which it is carried on or because it is conducted in an improper manner. 39 Am Jur, Nuisances § 43. Impregnation of the atmosphere with disagreeable or offensive odors or stenches may become a nuisance where the atmosphere is contaminated to such an extent as to substantially impair the comfort or enjoyment of adjacent occupants. 39 Am Jur, Nuisances § 59.

■ The record shows that defendants' dump constituted not only a statutory nuisance under the statutes quoted above, but also constituted a common law nuisance that was properly abated. People v. Metropolitan Disposal Co., 345 Ill App 570, 104 NE2d 107.

The equitable remedy should be fashioned to fit the particular facts of the case. The alteration of the remedy in the Metropolitan Disposal case, supra, so as to best serve the public interest by filling the dump by means of accelerated dumping under supervision and then covered over, does not distinguish that case from the instant one.

Defendants continuously call attention to the fact that their dump has been in operation for over thirty years. This is of no consequence. The dump in the Metropolitan Disposal case was in operation for more than forty years but when the facts evidenced that it had become a public nuisance it had to be closed. Defendants' dump is full, reeking, hazardous and a nuisance under the relevant statutes and the common law. It should be abated.

Defendants' heavy reliance on Ward v. Illiopolis Food Lockers, Inc., 9 Ill App2d 129, 132 NE2d 591, and Gardner v. International Shoe Co., 386 Ill 418, 54 NE2d 482, is inappropriate. Although both cases have language and abstract propositions of law that would be helpful to defendants, they are factually quite different from the instant case and the weight of the evidence in both those cases does not nearly measure up to the evidence presented here.

Defendants mustered some testimony in their own behalf, but plaintiffs' evidence is overwhelming in establishing the existence of a nuisance. Therefore, defendants' contention that a trial at law is required to establish the fact that the dump is a nuisance before equity will intervene is without merit. Since the right to equitable relief is clearly established here because of the unreasonable and unlawful use of defendants' dump to the injury of others, it is not necessary that the question of nuisance should first have been determined in a suit at law. City of Pana v. The Central Washed Coal Co., supra; Wente v. Commonwealth Fuel

Co., 232 Ill 526, 83 NE 1049; Oehler v. Levy, 234 Ill 595, 85 NE 271. The decree is affirmed.

Decree affirmed.

BURKE and FRIEND, JJ., concur.