C. M. Ford, Petitioner-Appellant, *v.* The Environmental Protection Agency *et al.*, Respondents-Appellees.

(No. 72-60;

Third District—February 4, 1973.

712

William Eaken, of Kankakee, for appellant.

Prescott E. Bloom, of Peoria, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from an order of the Illinois Pollution Control Board which was entered in an administrative proceeding before the Board initiated by a complaint of the Environment Protection Agency. C. M. Ford, owner and operator of a solid refuse disposal site, has filed a petition for review of such order pursuant to the provisions of section 41 of the Environmental Control Act. (Ill. Rev. Stat. 1971, ch. 111½, par. 1041.) The Pollution Control Board made findings that petitioner Ford had violated the Act and rules promulgated thereunder in certain re-

spects, and directed that the dumping of refuse be discontinued and that the condition of the site be corrected. The Board also assessed a penalty of $1000 against the petitioner.

On appeal in this court, the petitioner Ford contends that the imposition of a money penalty is a judicial function, which, by virtue of Section 1 of Article II of the Illinois Constitution of 1970 cannot be delegated to an administrative officer or agency; that the Act deprives alleged violators of a jury trial as guaranteed by section 13 of Article I of the Illinois Constitution of 1970; and that the findings and order of the Board in this case failed to comply with the Act and that thereby the order is ineffective.

The penalty assessed against petitioner was levied under authority granted by sections 33(c) and 42 of the Act which, in pertinent parts, provide that the Board, after a hearing and determination, may impose upon any person who violates the Act or regulations adopted by the Board, a penalty of not to exceed $10,000 for such violation and an additional penalty of not to exceed $1,000 for each day during which such violation continues. (Ill. Rev. Stat. 1971, ch. 111½, pars. 1033(c) and 1042.) The first issue, therefore, presented to this court is the question of whether these sections confer judicial power upon an administrative body in violation of section 1 of Article II of the Illinois Constitution of 1970. For the purpose of considering precedents relating to construction of the Act, we note that the section referred to in the 1970 Constitution restates the doctrine of separation of powers between the legislative, executive and judicial branches of government embodied in Article III of the Constitution of 1870. Helmann & Whalen, *Constitutional Commentary*, Smith-Hurd Ann. Stat., Const. Art. 2 § 1.

■■ Administrative agencies have no inherent judicial powers. (*Michelson v. Industrial Com.*, 375 Ill. 462; 73 C.J.S., *Public Administrative Bodies*, etc., § 36.) Based upon the doctrine of separation of powers, it has been held that the legislature cannot confer judicial powers upon an administrative officer or agency. (*People v. Mallary*, 195 Ill. 582; *People ex rel. Board v. P. & P. U. Ry. Co.*, 273 Ill. 440; 1 I.L.P., Administrative Law, etc., § 7.) We have before us in this case, legislation which permits an administrative board to impose monetary penalties for violation of the Environmental Control Act. Petitioner, relying upon *Reid v. Smith*, 375 Ill. 147, and *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. People ex rel. Barter*, 212 Ill. 638, contends that the imposition of a penalty for violation of a law is a judicial function which cannot be reposed in an administrative officer or agency.

■■ It is clear that an administrative officer or agency cannot impose

criminal penalties, inasmuch as "civil procedure is incompatible with accepted rules and constitutional guarantees covering the trial of criminal prosecutions." (*Helvering v. Mitchell*, 303 U.S. 391, 402, 58 S.Ct. 630, 634, 82 L.E. 917, 924.) It is also clear that the legislature has the power to impose both civil and criminal sanctions for violation of legislative acts, as demonstrated by Articles 10 and 13 of the Illinois Income Tax Act. (Ill. Rev. Stat. 1971, ch. 120, Art. 10, Art. 13.) As we view the Act before us in this case, we conclude that it is to be construed as evidencing that a civil sanction was intended. No mention of crime or criminal prosecution is made in the Act, and by the last paragraph of section 42 the legislature has provided for a distinctly civil procedure for the collection of the penalties imposed, thus manifesting its intent that the penalties authorized are civil sanctions. (See: *Helvering v. Mitchell*, 303 U.S. 391, 402, 58 S.Ct. 630, 82 L.Ed. 917; *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379; *Rex Trailer Co. v. United States*, 350 U.S. 148, 76 S.Ct. 219.) Although a distinction was not made in presentation to this court, we noted that the penalties provided for in the statutes under consideration in the *Reid* and *Cleveland* cases were civil in nature and that their imposition was nonetheless held to be a judicial function. We do not, however, consider that either the *Reid* or *Cleveland* decision is persuasive or controlling in this case.

The *Cleveland* case was decided in 1904 prior to the development of administrative law as we know it today and involved a section of the Drainage Act requiring property owners, annually, to clear impedimenta from streams. In that Act, county clerks, as a penalty, were authorized to assess a $10 drainage tax against noncomplying owners and an additional tax of $5 for each year the violation continued. While the decision was prompted in part by considerations of due process, not present in the cause before us, the Illinois Supreme Court held that ministerial officers have no power to inflict penalties for violation of laws and found the penalty provisions repugnant to the "separation of powers" articles of the Constitution. Approximately 40 years later, however, the *Cleveland* case was overruled in principle by *Department of Finance v. Gandolfi* (1940), 375 Ill. 237, where it was held that there was no constitutional barrier to the administrative assessment of tax penalties. The *Gandolfi* case involved the imposition of penalties for delinquent retailers occupational tax and the court reasoned that the power was ministerial, rather than judicial, since the penalties assessed required merely a computation or calculation on data from which all reasonable minds would reach the same result. If we apply this rationale to the statute involved in the *Cleveland* case which called for automatic assessment of a fixed amount

of tax as a penalty, we believe it necessarily follows that *Cleveland* is no longer authority for a rigid rule that the imposition of a civil monetary penalty is always a judicial function.

The *Reid* case, 375 Ill. 147, involved a statute which required those contracting with the State or any of its political subdivisions, for the construction of public works, to pay their workmen the daily wage prevailing in the locality where the work was to be performed and authorized a penalty of $10 per day for each workman not receiving such wage. The penalty was to be assessed and retained either by the public body awarding the contract or by the Department of Labor. The court in the *Reid* case cited *Cleveland* and, also, *People* v. *Mallary*, 195 Ill. 582 (a case which involved a statute which permitted a board to increase the severity of a criminal sentence by transferring prisoners from reformatories to penitentiaries).The *Reid* court perfunctorily held that the authority given to the awarding body or the Department of Labor, conferred judicial power upon them in violation of the Constitution. In looking to the nature of the penalty involved, *viz.*, a fixed rate penalty calculated from fixed data, we observe that it is difficult to reconcile this holding with the *Gandolfi* decision, which was decided by the same court. Nevertheless, we find that two things are apparent. The contemporary developments in the area of administrative law were not called to the attention of, or considered by, the court in the *Reid* case and, also, statutory differences would make the *Reid* case inapplicable in a case of the type we have before us.

■■ By reason of the increasing complexity of society and the burdens on all branches of government, courts and legislatures alike in the past 50 years have come to recognize that the delegation of functions to board, commissions and agencies, is becoming more and more essential to efficient government. Speaking in *Reif v. Barrett*, 355 Ill. 104, 132, the Illinois Supreme Court has said:

> "Where the legislative body has the power to enact a law as a necessary adjunct to such power it has the legal right to adopt a procedure for the administration of such law. It may do this through commissions, or through boards, and it may grant to such administrative bodies certain authority and certain powers in keeping with the spirit of the act for the practical application and operation of the law."

Although the essentially legislative and judicial powers cannot be delegated, we believe it implicit in the authorities that where direct or immediate judicial action is inexpedient or impractical, quasi-judicial functions may be conferred upon and exercised by an administrative agency, provided the laws conferring such powers are complete in their content;

are designed to serve a general public purpose; are such as to require a consistent and immediate administration; and further provided that all administrative acts are subject to judicial review. See: *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 60 S.Ct. 907; *Reif v. Barrett,* 355 Ill. 104; *Department of Finance v. Cohen,* 369 Ill. 510; *McRae v. Robbins* (Fla.), 9 So.2d 284; 1 Davis, *Administrative Law Treatise,* sec. 2.10.

In the *Reid* case hereinabove referred to, the statute under consideration did not have a general public purpose; there was no urgency for its administration; and by delegating penalty powers to any political subdivision of the State, the administration of the law was so decentralized as to produce the certain result of inconsistency in its application and operation. By way of contract, the Environmental Control Act under consideration in this case is a definitive police measure; has a general public purpose going to the condition necessary to sustain life; due to the urgency of stopping pollution direct judicial action is considered to be impractical and inexpedient; and the centralization of its administration in the Environmental Protection Agency and the Pollution Control Board is designed to insure its consistent enforcement. We do not see in the *Reid* case or in the *Cleveland* case, an inexorable command that the imposition of a monetary penalty is an essentially judicial function.

Administrative impositions of penalties are commonplace within the State and Federal government structures and has included "revocation, suspension and non-renewal of licenses; fraud orders; withdrawal of second-class mailing privileges; exclusion and deportation of aliens; confiscation, seizure, or destruction of property; withdrawal of the privilege of contracting with the government; expulsion and suspension from securities exchanges; denial of benefits; and adverse publicity." (Davis, Administrative Law Text (1959), p. 47). The Supreme Court of this State itself has stated that "the constitution has not been interpreted so rigidly as to preclude the possibility of administrative adjudication" (*Cermak Club, Inc. v. Illinois Liquor Commission,* 30 Ill.2d 90, 92-93), and it has been consistently held that administrative officers or agencies, without offending the constitution, may be empowered to revoke or suspend licenses. In this connection it was said in *Department of Finance v. Gandolfi,* 375 Ill. 237, at 240:

> "An administrative officer empowered to issue and revoke licenses to engage in a business or profession necessarily exercises quasi-judicial powers in determining whether a license should be issued or revoked, but such exercise of power is incidental to the duty of administering the law and does not constitute the exercise of judicial power within the prohibition of the constitution."

(See also: *Gadlin v. Auditor of Public Accounts,* 414 Ill. 89.)

■■ In essence, the principle emerging from these decisions is that an administrative officer or agency may penalize, without offending the constitution, when the penal function is incidental to the duty of administering the law. This is consistent, we believe, with the earlier observation in *Reif v. Barrett*, 355 Ill. 104, 132, that the legislature may grant to the body charged with the duty of administering a law such authority and powers as are necessary for "the practical application and operation of the law."

■■ Since there are no compelling precedents to the contrary, and since the penalties provided for in section 43(c) and 42 of the Environmental Control Act are civil, it is our opinion that it is the principle of the cases to which we have referred, which control and which must be applied in this case. Specifically, it is our conclusion that the penalty powers given the Pollution Control Board are incidental to its duties of administering the law, and, as such, are quasi-judicial powers which fall outside the prohibition of the Constitution. Without such power, the duty to administer the Act would be difficult to fulfill, if not impossible, and the Act itself might become an exercise in futility. We are cognizant of the fact that quasi-judicial power given approval in the *Cermak, Gadlin,* and *Gandolfi* decisions related to the granting and revocation of licenses to engage in a business or profession, as distinguished from the power to impose a monetary penalty with which we are concerned in this case, but we see no rational basis for distinction. Each power, under the particular statutes involved, is incidental to the duty to administer the statute in a practical and effective manner. Moreover, to distinguish between the two powers and the authority of an administrative body to exercise them, would create a strange anomaly in the law. Measured in terms of severity, the power to impose a monetary penalty is insignificant when it is considered that the revocation of a license in many instances may result in the destruction of a valuable business, or in depriving a licensee of his ordinary means of livelihood. Accordingly, we held that the authority to impose monetary penalties granted by sections 33(c) and 42 of the Act does not constitute a prohibited grant of judicial power. Such impositions are, necessarily, subject to judicial review and to appropriate tests to determine whether the imposition is reasonable and proper under its circumstances in each particular case. We do not find any such abuse in the imposition of the penalty in the cause before us.

■■ The contention of the petitioner that the Act deprives him of his constitutional right to a jury trial is also without merit. Section 13 of Article I of the Constitution of 1970 provides:

"The right of trial by jury as heretofore enjoyed shall remain inviolate." Ill. Rev. Stat. 1971, Art. I, sec. 13, p. 14.

and, except for changes in punctuation is identical with the first clause of section 5 of Article II of the 1870 Constitution of Illinois. (Ill. Rev. Stat. 1969, p. 11.) No change in construction was, therefore, intended. It has been consistently held that such constitutional language was designed simply to secure the right of trial by jury in all tribunals, "as it had theretofore been enjoyed"; that it was not intended to confer the right in any class of cases where it had not previously existed; and that it was not intended to guarantee trial by jury in special statutory proceedings unknown to the common law. (See: *People ex rel. Keith v. Keith*, 38 Ill.2d 405, and decisions therein cited and discussed.) We have before us a special statutory proceeding unknown to the common law and we, therefore, conclude that the constitutional right of petitioner to a jury trial has not been abridged.

■■ As part of petitioner's argument on the jury trial issue, petitioner, without citation of the section of the Act relied upon, asserts that "under the statutory scheme of the Environmental Control Act an enforcement action may be brought in the circuit court or before the Pollution Control Board", and on this basis, petitioner argues that the Act unfairly permits the agency filing the complaint to determine whether or not there shall be a jury trial. It is sufficient for the purposes of this case to point out that there is no statutory basis for such contention. There is no provision in the Act which, in the alternative, permits an enforcement action of the type pending before us to be commenced in the circuit court, where a jury trial would be authorized.

Petitioner's contention that the order of the Board entered in this case fails to comply with the Act centers around section 33(c) (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(c)), which provides as follows:

> "(c) In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved including, but not limited to:
> (i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people;
> (ii) the social and economic value of the pollution source;
> (iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved; and
> (iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source."

■■ With the exception of a finding that a public health hazard would

be created if the conditions at petitioner's dump site were permitted to continue, there is no manifestation in the findings or order, either expressly or by implication, that the Board took into consideration the other factors enumerated by the legislature in section 33(c). Petitioner interprets the section as making it mandatory for the Board to hear evidence relating to each factor; as placing the burden on the Environmental Protection Agency to introduce such evidence; and as requiring the Board to make an express determination as to each factor. The court in *Rockwell Lime Co. v. Commerce Com.*, 373 Ill. 309, 322, stated:

"When an administrative agency is required, as a condition precedent to an order, to make a finding of facts, the validity of the order must rest upon the needed finding. Where lacking, the order, it follows necessarily, is ineffective."

Petitioner on the basis of such language contends that the Board's order in this case is ineffective because it did not make the findings presumably required by section 33(c).

■■■■ In arriving at legislative intent a statute should be considered as a whole and all parts considered together (*Scribner v. Sachs*, 18 Ill.2d 400; *Carnahan v. McKinley*, 80 Ill.App.2d 318), and when section 33(c) is read in *pari materia* with section 31(c) of the Act, the construction of the former urged by petitioner cannot prevail. By section 31(c) the legislature has provided "in hearings before the Board under this Title the burden shall be on the agency or other complainant to show * * * that the respondent has violated or threatens to violate any provision of this Act or any rule or regulation of the Board. If such proof has been made the burden shall be on the respondent to show that compliance with the Board's regulations would impose an arbitrary or unreasonable hardship." (Ill. Rev. Stat. 1971, ch. 111½, par. 1031(c).) The agency, therefore, in summary, is given only the burden of establishing a *prima facie* case of a violation and, under language so clear, it cannot be said that the legislature intended the agency to have the additional burden of introducing proof (affirmatively, as part of the complainant's case) relative to each of the factors enumerated in section 33(c).

■■■■ While, so far as we are able to determine, this cause involves an issue of first impression, we believe that section 33(c) has reference to mitigating factors, and where pertinent and applicable to a particular case, it was the intent of the legislature that such of the factors as were known to the Board through its expertise or put into issue by evidence before it, should be considered by the Board in making its determination. Necessarily, in view of the limited burden put upon the Agency by section 31(c), the burden of going forward, after the Agency has made

a *prima facie* case, would then be on the appellant, if he so desired, to prove what section 33(c) describes as the "facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits" involved in the violation. No such proof was introduced in this case, and we, therefore, cannot say that the order of the Board is defective because the specific determinations were not made as to each of the factors set forth in section 33(c). It should be noted, likewise, that it is not necessary for a commission or a board to make a particular finding as to every evidentiary fact or claim. It is sufficient that the findings are made which are adequate to support the order of the board and that such findings have a substantial foundation in the evidence. *E.g., United Gas Co. v. Commerce Commission,* 47 Ill.2d 498.

■■ The complaint filed in the proceeding before us charged, *inter alia,* that "on or about August 5, 1971, and August 6, 1971" petitioner had; "(a) allowed open dumping of refuse at his site in violation of specified sections of the Act and a Board rule; and (b) operated the site in violation of the provisions of six different rules." He was found to have violated the Act and the rules in each of the respects charged. For his final contention, petitioner asserts that the order of the court was defective because no findings were made as to the date or dates upon which the violation occurred. We see no support for this contention in the record. The findings expressly noted that photographs, received in evidence, had been taken of the premises on August 5 and 6, 1971, and that such photographs "vividly show the principal violations found above." Clearly the order found that on August 5 and 6 petition had allowed the open dumping of refuse, an existing violation regardless of the date or dates upon which the dumping occurred, and that the condition of the premises on such dates was not in keeping with the housekeeping rules petitioner was charged to have violated.

For the reasons stated, the order of the Board is affirmed.

Order affirmed.

SCOTT and DIXON, JJ., concur.