THE PEOPLE *ex rel.* WILLIAM J. SCOTT, ATTORNEY GENERAL *et al.*, Plaintiffs-Appellees, *v.* CHARLES M. JANSON *et al.*, Defendants-Appellants.

(No. 71-154;

Third District—March 9, 1973.

*Rehearing denied April 25, 1973.*

DIXON, J., dissenting.

John E. Cassidy, Sr., of Peoria, for appellants.

Robert S. Calkins, State's Attorney, and Prescott Bloom, both of Peoria, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the circuit court of Peoria County. The original proceedings were instituted on October 16, 1970, when the plaintiffs, the Attorney General of the State of Illinois and the State's Attorney of Peoria County, filed a complaint against the defendant, Charles M. Janson, and others which averred that the defendant was in possession of and operator of certain property being used commercially for the purpose of dumping garbage and other refuse. The complaint prayed that a temporary injunction issue without notice and that the defendant be required to pay the sum of $10,000 and the further sum of $1,000 per day for each day he operated the dumping area in violation of the temporary injunction sought. The complaint then asked that a hearing be held and that the temporary injunction issued be made permanent.

All parties to the appeal agree that the complaint was couched in terms of the Environmental Protection Act of 1970 (ch. 111½, sec. 1001—1051, Ill. Rev. Stat.), hereinafter referred to as the Act. The complaint states that the complainants are acting under its provision and specifically states that it seeks relief under the Act's penalty provisions, being Sections 42 and 43 of Chapter 111½, Illinois Revised Statutes. The complaint further recited the defendant's alleged misconduct as being in violation of Section 21 of the Act and relies upon the Act's definition of the terms "garbage", "open dumping", "refuse" and "sanitary landfill" as they are defined in Section 3, subparagraphs (e), (h), (k) and (l). An affidavit in support of the complaint was filed by a W. Keith Weeber, who was the regional engineer of the Illinois Environmental Protection Agency, hereinafter referred to as the Agency, which had been created under the Environmental Protection Act of 1970. The complaint in seeking a temporary injunction in all respects relied upon the procedure as delineated in the Act.

Pursuant to the prayer of the complaint a temporary injunction was

issued without notice on the day of its filing. The defendant was ordered to cease and desist from dumping except under supervision of the Environmental Protection Agency.

On October 22, 1970, a hearing was held on a petition to dismiss the temporary injunction after which the trial court found there was no circumstance of extreme emergency creating danger to public health on the defendant's property and the temporary injunction was dismissed. A subsequent motion by the defendant to dismiss the complaint was denied. A hearing on the complaint and an answer filed was set for a non-jury trial for February 16, 1971; however, on that date the parties entered into a stipulation that the trial be indefinitely continued and that the operation of the dump be suspended until an earthen wall be designed and constructed under the supervision of W. Keith Weeber of the Agency. The stipulation provided for certain specifications and other procedures to be followed by the defendant and that operations would be permitted upon written authority from Weeber. The stipulation stated that it was the intention of the parties that upon completion of the plan of restoration as provided in the regulations of the Agency, the premises would be returned to the defendant. It is to be noted that the stipulation further provided that should the defendant fail to operate a new site in accordance with the landfill requirements of the agency, immediate monetary penalties could be imposed upon the defendant by the court and that a written certification of noncompliance of the payment of a monetary sum sufficient to restore the premises to a sanitary condition by Weeber, would serve as a final finding of fact binding upon the parties and the defendant could thereafter be punished for contempt, without a hearing and without notice.

Subsequently a petition for penalties was filed by the plaintiffs. The defendant answered the petition and filed a motion to dismiss it. This motion was denied and after an evidentiary hearing the court imposed a $5,000 fine on the defendant and ordered the issuance of a temporary injunction prohibiting all dumping until Weeber certified to the court that the plan for restoration had been completed or that the defendant show the court proof of compliance whereupon the injunction would be dissolved. During the evidentiary hearing which preceded the imposition of the fine and the issuance of the injunction the plaintiffs called eight witnesses and the defendant as an adverse witness. Of the nine testifying at the behest of the plaintiffs, five of the witnesses were either employees of the Environmental Protection Agency or the Bureau of Pollution Control. The testimony of witnesses for the plaintiff and the defendant during the hearing was quite conflicting and it is evident that considerable misunderstanding existed as to what type of material could

be dumped at the site during the restoration period and that further Weeber was dilatory in filing the restoration plan with the court as required by the stipulation. This dilatoriness on the part of Weeber is evident from the following colloquy which ensued during the hearing:

"The Court: Mr. Weeber why did you not submit a plan to the court as you were ordered to * * *. Is there another plan on file other than this one?

The Witness: No Sir, your honor.

The Court: Then I can ask him. Why did you not file a plan, with this court as you were ordered to do.

The Witness: I could not get clearance from my control office to do so.

The Court: Did you understand anyone but you were to prepare and submit your plan to the court.

The Witness: Not at the time of our agreement in your chambers.

The Court: And you did not do what you understood it was your duty to do.

The Witness: I did not.

The Court: I'm not trying to put you on the spot. Is that a fair question?

The Witness: Yes.

The Court: You didn't.

The Witness: I did not.

The Court: Why didn't you?

The Witness: Because I wanted to continue in my job."

Further testimony clearly established that Weeber was having difficulties with his supervisor in obtaining a plan of restoration for the defendant's property and that ultimately he was transferred to other assignments in the Environmental Protection Agency.

The defendant upon failure to pay the fine of $5,000 was later cited into court for a proceedings to discover assets. In those proceedings the defendant failed to produce certain books and records and he stated that he refused to do so until he was represented by counsel and that his present counsel was out of the country. The court rejected this explanation and directed that he be confined to the county jail. The defendant was incarcerated until released by an order of this court.

We have recited both the procedural and factual aspects of this case in considerable detail because we believe that a close scrutiny of the same is necessary to determine the paramount issue presented by this appeal which is whether the circuit court had jurisdiction of the subject

matter of the case. If the court had jurisdiction then its subsequent acts were valid, if not they were null and void.

■■ That our circuit court has the power to abate nuisances and enforce its orders relating to such abatement is unquestioned. Our courts have long possessed the authority to issue injunctions in order to abate acts and situations which are offensive to society or which deprive one of his right to enjoy the benefits of his property. Should the court's commands contained in a writ of injunction be disobeyed, then the court can enforce its orders and decrees through contempt proceedings.

In 1970 our legislature recognized that as the result of many factors our nation was being harmed by the pollution of the air, our waterways and our land. In order to combat this threat the legislature enacted some comprehensive legislation which is known as the "Environmental Protection Act." This act stated:

> "It is the purpose of this act * * * to establish a uniform state wide program supplemented by private remedies, to restore, protect, and enhance the quality of the environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them." Ill. Rev. Stat. Ch. 111½, Sec. 1002 (2b).

The Act is complete, detailed and fashioned to protect the public health and comfort from pollution of air, water, land and also provides for the regulation of noise. It specifies acts or omissions that constitute violations and creates three administrative agencies, to-wit, the Environmental Protection Agency, which is charged with investigation and administration, the Pollution Control Board, charged with enforcement, and the Institution for Environmental Quality, which is concerned with research.

The act contemplates that the agency shall investigate alleged violations and then if deemed necessary institute action against the alleged violator. (Ill. Rev. Stat., ch. 111½, sec. 1030, 1031.) The Board was granted broad powers. It may rule on permits, enter cease and desist orders, act as a tribunal, compel the attendance of witnesses, hear witnesses and rule on the admissibility of evidence, and assess substantial fines for the punishment of violators. Ill. Rev. Stat., ch. 111½, secs. 1032, 1033 and 1042.

Directing our attention to Chapter 111½, Section 1043, Illinois Revised Statutes, we find that the Act provides as follows:

> "In circumstances of extreme emergency creating conditions of immediate danger to the public health, the States Attorney or Attorney General may institute a civil action for an immediate

injunction to halt any discharges or other activity causing the danger. The court may issue an ex parte order and shall schedule a hearing on the matter not later than 3 working days from the date of the injunction"

■■■ In the instant case the complaint prayed for the immediate issuance of an injunction, without notice, in an *ex parte* proceedings. This injunction was issued, but at a subsequent hearing the trial court found that there were no circumstances present of extreme emergency creating conditions of immediate danger to the public health and the temporary injunction was then dissolved. Up to this point it is clear that the circuit court of Peoria County had jurisdiction of the subject matter; however, in view of the allegations of the complaint and the further remedies sought, we are of the opinion that upon the dissolution of the temporary injunction the circuit court divested itself of jurisdiction. We so hold because it is readily apparent from an examination of the record that the plaintiffs were attempting to avail themselves of all the machinery of the Agency regarding investigation, enforcement and penalties in hearings before the circuit court of Peoria County, when in fact such machinery and procedures are specifically made available only in an administrative hearing as provided for in the Environmental Protection Act. When a statute authorizes prescribed procedures and the court acts contrary to the authority thus conferred it has exceeded its jurisdiction. See *United Mine Workers of America Union Hospital v. United Mine Workers of America District No. 50*, 1 Ill.App.3d 822, 275 N.E.2d 231; *People v. Niehaus*, 356 Ill. 104, 190 N.E. 349.

■■ It is a well settled proposition that jurisdiction of the subject matter means the power of that particular court to hear the type of case that is then before it. (*Baker v. Brown*, 372 Ill. 336, 23 N.E.2d 710; *Rabbitt v. Frank C. Weber & Co.*, 297 Ill. 491, 130 N.E. 787.) In the instant case the complaint which instituted the action specifically referred to violations of the Environmental Protection Act and requested that the Act's enforcement provisions be activated. When the injunction issued without hearing or notice pursuant to the allegations in this complaint was dissolved, the court refused to grant the defendant's motion to dismiss the complaint. When the case was subsequently called for trial it was stipulated by the parties and with the approval of the court that the trial be indefinitely continued and that authority be delegated to a Keith Weeber, an employee of the Environmental Protection Agency, to design a restoration plan and manage the restoration of the dump. The stipulation further provided that the findings of Weeber would be accepted by the court without litigation and that enforcement orders if necessary would be entered. It is argued by the plaintiffs that a stipula-

tion is in the nature of a contract between litigants and such contracts are looked upon with favor by the courts. With this argument we have no quarrel, however, it is well settled that while a court may acquire jurisdiction of the person by consent, jurisdiction of the subject matter cannot be conferred by consent or stipulation. (*Meyer v. Meyer*, 328 Ill. App. 408, 66 N.E.2d 457.) In *Werner v. Illinois Cent. R. Co.*, 379 Ill. 559, 42 N.E.2d 82, the court held that:

> "Jurisdiction could not be conferred by the consent of the parties and was not waived by defendant's appearance and participation in the trial. It is a question that may be raised at any time, even on appeal."

Also our Supreme Court in the case of *Toman v. Park Castles Apartment Bldg. Corp.*, 375 Ill. 293, 31 N.E.2d 299, stated:

> "It is a familiar rule that when a court has no jurisdiction of the subject matter, it cannot be conferred by consent, and when lack of jurisdiction appears the court should decline to proceed further in the cause. * * * Whether the question of jurisdiction was raised in the lower court is immaterial. There can be no waiver of jurisdiction of the subject matter where the trial court lacked jurisdiction to enter the order appealed from."

There is no escaping the conclusion that the plaintiffs in the instant case were charging violations of the Environmental Control Act. They were desirous of using the mechanics of the Act in an effort to abate certain violations and when the court attempted to do so, it encountered difficulty in enforcing its own orders in that Weeber, an official of the Environmental Protection Agency, could not obtain permission from his superior to file a restoration plan as ordered by the court. Lastly, the plaintiffs sought to have imposed upon the defendant the penalties prescribed in the Act. The plaintiffs asked the trial court for a hearing and relief as is afforded by the Environmental Control Act, but the statute does not provide for such in the circuit court.

■■ It should be noted that the role of the circuit court is tightly restricted by the terms of the Act. The court may grant injunctive relief only when there exists an "extreme emergency with immediate danger to public health." (Ill. Rev. Stat., ch. 111½, sec. 1043.) Injunctive relief is also provided to a person adversely affected by a prior ruling of the anti-pollution board, however, no such action for relief may be brought until 30 days after a denial of relief by the Board. Ill. Rev. Stat., ch. 111½, sec. 1045.

The plaintiffs in the instant case never petitioned the board for action against the defendant, but filed with the court a proceedings based upon procedure and relief granted by statute to an administrative agency. The

results stemming from this action demonstrate the chaos which results when a party attempts to pervert and transfer the powers vested exclusively in an agency to a court of law. Such a practice is not permitted in other situations, *i.e.*, a utility rate case or workman's compensation matter, nor can it be permitted here.

The plaintiffs argue that Chapter 14, Sections 11 and 12, Illinois Revised Statutes, is sufficient statutory authorization to sustain the validity of the procedure taken in the instant case. The statutory provisions which the plaintiffs urge us to consider are as follows:

"AIR, LAND AND WATER POLLUTION

AN ACT in relation to the prevention and abatement of air, land and water pollution.

P.A. 76-205 eff. July 1, 1969. Amended by P.A. 76-2434, § 2, eff. July 1, 1970.

*Be it enacted by the People of the State of Illinois, represented in the General Assembly:*

11. Definitions.) § 1. The following terms as used in this Act shall, unless the context otherwise requires, have the following meanings:

(a) Air pollution means air pollution as defined in the Environmental Protection Act, enacted by the 76th General Assembly.[1]

(b) Water pollution means water pollution as defined in the Environmental Protection Act, enacted by the 76th General Assembly.

(c) Land Pollution means land pollution and refuse disposal as set out in the Environmental Protection Act enacted by the 76th General Assembly. Amended by P. A. 76-2434, § 1, eff. July 1, 1970.

12. Prevention of air, land and water pollution—Mandamus or injunction—Power of Attorney General.) § 2. The Attorney General has the power and authority, notwithstanding and regardless of any proceeding instituted or to be instituted by or before the Environmental Protection Agency, Pollution Control Board or any other administrative agency, to prevent air, land or water pollution within this State by commencing an action or proceeding in the circuit court of any county in which such pollution has been, or is about to be, caused or has occurred, in order to have such pollution stopped or prevented either by mandamus or injunction. The court shall specify a time, not exceeding 21 days after the service of the copy of the petition of mandamus or injunction for answer, and in the meantime the party shall be restrained from

---

[1] Chapter 111½, sec. 1001 *et seq.*

continuing such pollution pending hearing before the court. In case of default, or after answer, the court shall immediately inquire into the facts and circumstances of the case and enter an appropriate order in respect to the matters complained of. An appeal may be taken from the final judgment in the same manner and with the same effect as appeals are taken from judgments of the circuit court in other actions for mandamus or injunction. Amended by P. A. 76-2434, § 1, eff. July 1, 1970."

We do not hold the above statutory provisions meaningless, but we do deem them inapplicable in the case now before us because the plaintiffs in their complaint specifically requested that the procedure and relief granted by the Environmental Protection Act be invoked. Their complaint, which was never dismissed, is replete with references to various provisions of the Environmental Protection Act. No such procedure or penalties as prayed for by the plaintiffs can be found in the provisions set forth in Chapter 14, Sections 11 and 12, Illinois Revised Statutes, which relate to the power and authority of the Attorney General.

This court recently decided the case of *Ford v. Environmental Protection Agency and Pollution Control Board of the State of Illinois*, 9 Ill.App.3d 711, 292 N.E.2d 540. In speaking of the Environmental Control Act it was stated:

"There is no provision in the Act which, in the alternative, permits an enforcement action of the type pending before us to be commenced in the circuit court, where a jury trial would be authorized."

While this language was used in determining the right to a jury trial we nevertheless are of the opinion that its clear import is that enforcement provisions and sanctions such as were sought in the instant case require that a hearing be had before, and a determination made by the Pollution Control Board and not the circuit court.

Having determined that the circuit court of Peoria County did not possess the requisite jurisdiction to hear this case once the *ex parte* injunction had been dissolved we can only hold that the subsequent actions and orders of the court are void. Therefore the order fining the defendant in the sum of $5,000 and subsequent orders holding him in contempt is void and this cause is reversed.

STOUDER, J., concurs.

Mr. JUSTICE DIXON dissenting:

I cannot agree that the Circuit Court did not have jurisdiction to hear this case. Here we have a complaint for injunction, to abate a public

nuisance, brought by the Attorney General in the name of the People of the State of Illinois and the majority holding is that the Circuit Court has no jurisdiction of the subject matter.

The complaint basically alleges: that the Environmental Protection Act prohibits dumping of garbage except at a facility which meets the requirements of the Act; that the defendant has possession of property in Peoria County used for dumping; that he has permitted the operation of dumping and open burning as prohibited by the Act; that an injunction be made permanent, defendant be penalized as provided in the Act and that a mandatory injunction be ordered requiring defendant to comply with sanitary landfill requirements of the law.

The Environmental Protection Act provides for alternate ways of enforcement. Under Title VIII an administrative procedure is created. The complaint did not in any manner attempt to invoke this administrative procedure.

Title XII, Section 42 provides an alternate remedy. The applicable portion reads:

"Any person who violates any provision of this Act * * * shall be liable to a penalty * * * *and such person may be enjoined from continuing such violation* as hereinafter provided * * *. The State's Attorney of the County in which the violation occurred, or the Attorney General shall bring such actions in the name of the People of the State of Illinois."

The majority state, "There is no escaping the conclusion that the plaintiffs were charging violations of the Environmental Control Act." Of course they were. Under Title II, Air Pollution, certain acts are declared to be a *public nuisance* and are prohibited. Among them are, "Cause to allow open burning of refuse". Sec. 9(c).

Under Title V, Land Pollution and Refuse Disposal, certain acts are also declared to be *a public nuisance* and are prohibited. Among them are, "Cause or allow the open dumping of garbage." Sec. 21a.

The General Assembly has power to declare certain conditions to be nuisances even though they were not so regarded at common law. (*People v. Jones*, 329 Ill.App. 503.) The general rule was that relief against a public nuisance could be secured only by a public prosecution (*Swain v. Chicago B. & Q. R. Co.*, 160 Ill.App. 533.) Chancery has jurisdiction to abate a public nuisance. In *City of Chicago v. Fritz*, 36 Ill. App.2d 457, an injunction restraining use of land for purpose of dumping or burning garbage was upheld, the court holding such to be a common law public nuisance.

The Attorney General has both statutory and common law powers to

maintain actions on his own initiative. In addition to Sec. 42, previously discussed, the Attorney General has power to sue under his own Statute (Ill. Rev. Stat. 1971, ch. 14, sec. 12) which refers to the Environmental Protection Act for its general definitions of "pollution" but which does not in any way adopt or incorporate the detailed regulations of the Board. He also has common-law power to maintain all actions necessary to protect the welfare of the public. *Fergus v. Russel*, 270 Ill. 304.

Section 45a of the Act also declares that, "No existing civil or criminal remedy for any wrongful action shall be excluded or impaired by this Act."