THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GLEN W. ADAMS, Defendant.—(LeROY P. LEVITT *et al.,* Contemnors-Respondents-Appellants.)

First District (4th Division) No. 61413

Opinion filed January 28, 1976.

William J. Fitzpatrick, Special Assistant Attorney General, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, John T. Theis, and Eugene J. Rudnik, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

This is an appeal from an order of the trial court finding respondents, LeRoy P. Levitt, director of the Illinois Department of Mental Health, and John R. Collier, the superintendent of Manteno State Hospital, in contempt of court for failing to obey the last paragraph of a court order. The contempt order imposed a $100 fine upon each respondent. They appeal, raising the question of whether the trial court had statutory authority to issue the order holding them in contempt.

The action arose out of the following set of facts. In 1972 Glen Adams was indicted for murder but was found unfit to stand trial. He was remanded to the custody of the Department of Mental Health in accordance with section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, § 1005—2—2). After being treated in several facilities of the Department of Mental Health, the defendant was adjudged fit to stand trial. On May 28, 1974, a bench trial was held and based on the stipulated testimony of three psychiatrists, the defendant was found not guilty by reason of insanity. However, the defendant was found competent and in need of mental treatment and was remanded to the custody of the Department of Mental Health in accordance with section 5—2—

4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, § 1005—2—4(b)).

The order of May 28, 1974, acquitting the defendant by reason of insanity and committing him to the custody of the Department of Mental Health, contained the following provision in the last paragraph:

"IT IS FURTHER ORDERED that the Defendant GLEN W. ADAMS remain in the custody and care of the Department of Mental Health of the State of Illinois until such time the said Department deems it proper for his release but, prior to such release, he be returned to this Court for a hearing and determination by this Court that the Defendant is no longer afflicted with said insanity and is no longer in need of psychiatric treatment."

The defendant was treated at Manteno State Hospital until June 26, 1974, when he was released to the supervision of Rev. Cecil Osborne or Birmingham, Alabama. On July 8, 1974, the State's Attorney of Cook County presented to the trial court a petition for rule to show cause why respondents should not be held in contempt for failure to abide by the last paragraph of the court order of May 28, 1974. Following the denial of the respondent's motion to dismiss, vacate, alter, amend, or dismiss LeRoy P. Levitt as a named respondent, the respondents were found in contempt and fined $100 each. They appeal from this finding and adjudication of contempt.

The respondents contend that the trial court lacked statutory authority to compel a sanity hearing after acquittal by reason of insanity. They argue that the statute directs the court to make a specific finding as to "competence" and to make a specific finding that the defendant is "in need of mental treatment." Furthermore, they submit that if it is found that the person is still in need of mental treatment, the court is to then order the person to be hospitalized in the custody of the Department of Mental Health. The respondents submit that these actions are the only ones which the trial court is authorized to take. The People, on the other hand, maintain that the court had statutory authority since section 10—4 of the Mental Health Code of 1967 (Ill. Rev. Stat. 1973, ch. 91½, § 10—4) specifically grants the court which ordered the commitment authority to hold a competency hearing prior to a person's discharge from the Department of Mental Health.

In order to determine the scope of the circuit court's authority once a defendant has been discharged by reason of insanity, the statutes involved must be examined. Section 5—2—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, § 1005—2—4(b)) prescribes the following procedure after acquittal by reason of insanity:

"(b) After a finding or verdict of not guilty by reason of insanity under Section 115—3, or 115—4 of The Code of Criminal Procedure of 1963; and after a determination by the jury, or in the event of a jury waiver by the court that the defendant has not recovered from his insanity, the court shall enter an order finding the defendant to be in need of mental treatment and hospitalizing the defendant in the custody of the Department of Mental Health for an initial period not to exceed 12 months from the date of such order. The order of the court shall be in the form of and shall produce the same effects and subsequent review proceedings as an order of hospitalization under the Mental Health Code of 1967, and shall include a specific finding as to the legal competence or incompetence of the defendant under the Mental Health Code. The admission, detention, care, treatment, and discharge of the defendant after such order shall be under the Mental Health Code."

The Act provides that after the court has determined that the defendant has not recovered from his insanity, which is what the trial court found herein, the court is to enter an order finding the defendant to be in need of mental treatment and is to hospitalize the defendant in the custody of the Department of Mental Health, which is what was done below. Next, the Code provides that the trial court's order has the same effects and subsequent review proceedings as an order of hospitalization under the Mental Health Code, and there is also a requirement that there be a specific finding of legal competence or incompetence. After being acquitted by reason of insanity, the defendant was found to be competent, but he was also found to be in need of mental treatment and returned to the Department of Mental Health.

■■ The question becomes when does the circuit court lose jurisdiction over the defendant. Jurisdiction was acquired by the circuit court when the defendant was indicted. The circuit court heard the matter, tried the defendant on the indictment, and returned a verdict. Section 5—2—4(b) provides that admission, detention, care, treatment, and discharge after such order shall be under the Mental Health Code. We hold that the circuit court loses jurisdiction over the person and subject matter after the defendant is acquitted by reason of insanity and the court enters its order. Under the Mental Health Code, the circuit court only has jurisdiction over persons not charged with a felony who are in need of mental treatment. (Ill. Rev. Stat. 1973, ch. 91½, § 2—1.) The Mental Health Code of 1967 cannot be invoked until a defendant, like the one in the instant case, is acquitted. Once invoked, the section of the Mental Health Code of 1967 on discharge (Ill. Rev. Stat. 1973, ch. 91½, § 10—4)

provides that the superintendent may grant an absolute discharge by notifying the court which originally entered the order of hospitalization that such person has been given an absolute discharge from such hospital. The clerk of the court, after receiving the notice, is to make the notice part of the person's file and shall enter the fact of discharge and the date upon the docket. It is clear that the court issuing the original order, herein the circuit court, has no statutory authority to bring the defendant back before that court.

The Mental Health Code gives the superintendent of the hospital the sole power and authority to discharge patients as the welfare of the person and community requires. We think that the superintendent and his staff can best determine when the welfare of the person and the community requires a discharge of the hospitalized person. The trend appears to be in the direction of divesting courts of jurisdiction over defendants acquitted due to insanity. In *Reynolds v. Neill* (N.D. Tex. 1974), 381 F. Supp. 1374, the State of Texas was enjoined from using the release standards in a State statute which distinguished between civilly and criminally committed persons. The Texas statute required court approval for a criminally committed person to be released, while a civilly committed person could be released at any time the hospital felt the patient no longer needed hospitalization. The court found that State interests which justify differences in commitment standards do not justify different release standards. In *State v. Nomiya* (1970), 287 Minn. 487, 178 N.W.2d 905, the Minnesota Supreme Court reached a similar result. There the court held that the committing court did not have the power to refuse to order the release of anyone whose recovery had been certified or specified by the superintendent.

■■■ In Illinois the statutory requirement that the court clerk attach the notice to the file of the person who has been granted an absolute discharge by the hospital superintendent is merely a ministerial duty imposed on the court to clarify court records and to show that the person hospitalized has been discharged. (*Hill v. Relyea* (1966), 34 Ill.2d 552, 216 N.E.2d 795.) A verdict of not guilty due to insanity constitutes a full acquittal, and a person acquitted is entitled to all the protection and constitutional rights as if acquitted on any other ground. (*In Re Tew* (1972), 280 N.C. 612, 187 S.E.2d 13, 17.) Our Criminal Code provides that discharge shall be under the Mental Health Code which does not grant the circuit court any renewed authority to take jurisdiction over the defendant once he is acquitted. Consequently, by entering the order the circuit court was acting contrary to prescribed procedures and exceeded its authority. *People ex rel. Scott v. Janson* (1973), 10 Ill.App.3d 787, 792, 295 N.E.2d 140.

■■■ The State contends that the court which originally entered the order of commitment had the discretion to hold a competency hearing prior to the person's release from the Department of Mental Health. The court does have the authority to hold a competency hearing; however, sanity and competency hearings are separate and distinct matters. Commitment of a person in need of mental treatment does not constitute an adjudication of legal incompetence to care for and manage one's affairs. (*People ex rel. Drury v. Catholic Home Bureau* (1966), 34 Ill.2d 84, 95, 213 N.E.2d 507.) In this case, there was no need for a competency hearing since the court order following the acquittal found the defendant competent. Even if a hearing were held, all the court could do is make a determination as to whether or not the defendant was capable of handling his own affairs. The hearing the court was attempting to hold in the instant case was not a competency hearing, but a hearing to determine if the person was in need of mental treatment which is a matter reserved by statute to the superintendent of the Department of Mental Health. Discharge is to be under the Mental Health Code and the question of competency has nothing to do with discharge. Since the circuit court lost jurisdiction under section 5—2—4(b), the last paragraph of its order was void ab initio.

The final question becomes whether a person or persons, as in this case, can be adjudged guilty of contempt for disobeying an order which the court had no power to enter. We do not think so. A person is not guilty of contempt of court for disobedience of an order which the court had no jurisdiction to enter. (*Red Star Laboratories Co. v. Pabst* (1935), 359 Ill. 451, 454, 194 N.E. 734; *Fireman v. Smith* (1930), 341 Ill. 154, 155, 173 N.E. 64.) By notifying the court clerk, the respondents did all that they were statutorily required to do. Therefore, the order holding the respondents in contempt and fining them $100 is void and the cause is reversed.

Reversed.

DIERINGER and BURMAN, JJ., concur.