WALTER SEEGREN, Petitioner-Appellant, *v.* ENVIRONMENTAL PROTECTION AGENCY *et al.,* Respondents-Appellees.

(No. 71-255;

Second District—December 28, 1972.

Fuqua, Fuqua, Winter & Homer, of Waukegan, for appellant.

William J. Scott, Attorney General, of Chicago, (Morton E. Friedman, David C. Landgraf, and Richard W. Cosby, Assistant Attorneys General, of counsel,) for appellees.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The petitioner, Walter R. Seegren, seeks review of an order adopted by the Pollution Control Board of Illinois on August 5, 1971, which denied his petition for a "hardship" variance to permit him to construct and use certain sanitary sewers in the City of Waukegan. Direct appeal is taken to this court persuant to Section 41 of the Environmental Control Act. (Ill. Rev. Stat. 1971, ch. 111½, sec. 1041), and the Administrative Review Act.

The Environmental Control Act was adopted in 1970 and created the Environmental Protection Agency and the Pollution Control Board and established their respective powers. Title IX of the Act, entitled "Variances", provides in Section 35 as follows:

"The Board may grant individual variances beyond the limitation prescribed in this Act, whenever it is found, upon presentation of adequate proof, that compliance with any rule or regulation, requirement or order of the Board would impose an arbitrary or unreasonable hardship. In granting or denying a variance the Board shall file and publish a written opinion stating the facts and reasons leading to its decision."

Walter R. Seegren is a general contractor specializing in the construction of apartment buildings in Waukegan. Among his construction projects was the development of a certain area bounded on the north by Golf Road, on the west by Butrick Street, on the south by Buck Street and on the east by Pine Street, all within the limits of the city and the North Shore Sanitary District. This development was named "Sherwood Manor" and was to include, when completed, nine apartment buildings of 18 units each. Four of the buildings were completed and occupied prior to commencement of the matter before us.

In May, 1970, Seegren obtained building permits from the City of Waukegan for the 5th and 6th buildings, located on the west side of Pine Street, and construction commenced. The buildings were completed

in February, 1971, and Seegren's engineer prepared plans and specifications to extend a lateral sanitary sewer located in Pine Street to serve the two buildings. The lateral sewer runs north and connects with an eight-inch interceptor sewer in Golf Road. The plans and specifications were approved by both the city and the North Shore Sanitary District and were submitted to the Environmental Protection Agency for its approval at the end of February. That application was denied and, on March 17, the plans were resubmitted, apparently with some minor modifications.

On March 31, the Pollution Control Board handed down its now well known order in the case of *League of Women Voters of Illinois, et al. v. North Shore Sanitary District* (PCB 70-7, 12, 13 and 14), that banned further connections and extensions to the District's existing facilities until such time as the treatment plants could adequately treat additional effluent. On April 15, the Agency again denied Seegren's application to install the requested extensions.

On May 13, Seegren filed a petition with the Pollution Control Board for a variance pursuant to Section 35 of the Act (quoted above) and a hearing was held before a hearing officer on July 26. At the hearing, evidence was introduced that Seegren had lost approximately $48,000 in promotional expenses, loss of income, interest expense and penalties as a result of the delay caused by the denial of his application. It was also disclosed that Seegren had constructed a temporary septic system, at an additional cost of $5,000, to service the buildings. (The Board itself had suggested the possible use of septic systems to relieve the problem in its March 31 opinion rendered in the League of Women Voter's case.) No permit of any sort was obtained for the septic system. At the time of the hearing, the two buildings were using the septic system and were 85% to 90% occupied.

On August 5, the Board adopted an order denying Seegren's petition, by a vote of 3 to 2, and on August 13 filed its written opinion. That opinion stated that Seegren had "* * * commendably done what our March 31 order contemplated * * *" when he constructed the septic system but that in so doing he had rendered his petition moot since "* * * the sewer ban is not interfering with [his] * * * ability to make the intended use of his land." The two members of the Board who dissented from the majority also filed opinions wherein they pointed out that the septic system was installed as an emergency, interim solution only and was of "doubtful long-term acceptability."

Although the Board has heretofore made painstaking efforts to consider variances on a case-to-case basis, it appears that they generally have granted variances from the March 31 order and permitted connections to the facilities of the North Shore Sanitary District in those cases where

the petitioner shows substantial investment and development of a project prior to the date of that order. (*Wachta and Mota d/b/a Belle Plaine Subdivision v. Environmental Protection Agency,* (PCB 71-77) 8 Ill.App. 3d 436; *Monyek v. Environmental Protection Agency,* (PCB 71-80).) It is agreed that the petitioner here would be entitled to a variance, based on that practice, since, as we have seen, his two apartment buildings were completed at least a month before the order in the League of Women Voter's case. However, the Board here contends that their previous practice is not applicable to this case since the petitioner has solved his problem and, as a result, is not now suffering any hardship. We disagree.

Aside from the obvious incongruity of a septic system in operation within a city the size of Waukegan, the evidence showed that the "solution" was at best an unsatisfactory, interim measure. Emery Ikan, the engineer who designed the septic system for Seegren, testified that a septic system would only remove 30% of the organic material from the raw sewage whereas treatment would remove 90-95%. He testified further that Seegren's buildings were constructed on fill and that percolation tests conducted on the property showed that water was absorbed into the fill at the rate of 1 inch per minute whereas the accepted standard is one inch per 16 minutes. It was his opinion that the material from the septic tank would percolate through the field and have an effect on the underground water supply. Ikan believed that the septic field could service the two buildings for about two years.

Under these circumstances, we believe that the finding of the Pollution Control Board that the petitioner did not prove an unreasonable hardship was against the manifest weight of the evidence. To hold otherwise would be to compel him to continue to use a system, harmful in itself, until it was exhausted and then seek relief through the time consuming procedures provided in the Act. In effect, Seegren would be penalized for his efforts to mitigate his hardship.

For the reasons stated, the order dated August 5, 1971, is reversed and the matter remanded to the Board with directions to issue the appropriate permits. In view of our decision, we will not discuss the other matters raised in the petitioner's brief.

Reversed and remanded.

GUILD and T. MORAN, JJ., concur.