THE CITY OF WAUKEGAN *et al.*, Petitioners, *v.* THE ENVIRONMENTAL PROTECTION AGENCY *et al.*, Respondents.

(No. 72-4; ▮▮▮▮▮▮▮▮

Second District—May 2, 1973.

SEIDENFELD, J., dissenting.

Murray R. Conzelman, of Conzelman, Schultz, O'Meara & Snarski, and John R. Sloan, of Hall, Meyer, Fisher, Holmberg, Snook & May, both of Waukegan, for petitioners.

William J. Scott, Attorney General, of Chicago, (Lee A. Campbell, Assistant Attorney General, of counsel,) for respondents.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

This is an appeal from the action and order of the Illinois Pollution Control Board in assessing a fine of $1,000 against the City of Waukegan, and an additional fine of $250 each against T-K Disposal Inc., an Illinois Corporation, and Tewes Co., Inc., an Illinois Corporation.

In June of 1971 the City of Waukegan conducted its annual spring clean-up in conjunction with the aforementioned disposal or scavenger firms. The city alleged it had applied from a permit by letter to the Environmental Protection Agency but that no answer was received. In June, for a period of seven days, refuse, not including garbage, was deposited on the site provided by the city. It was then covered with dirt. The Environmental Protection Agency then brought this action before the Illinois Pollution Control Board charging the city with operating a refuse disposal site without obtaining a permit, open dumping, creating a water hazard, failing to provide daily cover, and other offenses incidental thereto.

The sole question presented in this appeal, and raised by petitioners in the hearing before the Board, is whether or not an administrative agency has the authority constitutionally to levy fines under the authority of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, secs. 1033(b), 1042, and 1044).

At the outset, this court is familiar with the case recently decided by

the Third District Appellate Court entitled *Ford v. Environmental Protection Agency* (1973), 9 Ill.App.3d 711, 292 N.E.2d 540. We do not agree with that opinion.

We are fully cognizant of the fact that if a case may be decided without determination of the constitutionality of the act involved, that it should be determined on a basis other than the constitutional question. The presumption is, of course, that the legislation is constitutional. (*Gadlin v. Auditor of Public Accounts* (1953), 414 Ill. 89, 110 N.E.2d 234.) But as the court stated in *Wabash R.R. Co. v. Order of Railway Conductors of America* (1949), 402 Ill. 548, at 551, 84 N.E.2d 406, at 408, in discussing the review of orders of the Commerce Commission:

> "* * * The purpose of a judicial review of an order of the commission is to keep it within its jurisdiction, so as to not violate any rights guaranteed by the constitution."

Administrative agencies are creatures of the legislature of rather recent vintage. The emergence of administrative agencies, as a necessary adjunct to the judicial branch of our government in our increasingly complex society, has not been without problems as to the limitation of the authority granted to them. As early as 1867, we find one of the first cases in this regard entitled *Willis v. Legris*, 45 Ill. 289. In that case the City of Kankakee had enacted an ordinance providing for a penalty to be imposed to prevent horses, mules, goats, sheep or swine from running at large in the city. Animals found at large were impounded and offered for sale. The owner offered to redeem them on the sale day, but the city marshall refused to deliver the animals unless the owner also paid the penalty provided by ordinance. The owner refused and sued in replevin. The supreme court, in holding that such an ordinance was unconstitutional, stated at page 292:

> "* * * Every citizen has a right to a judicial investigation when charged with an offense."

In *People ex rel. Martin v. Mallary* (1902), 195 Ill. 582, 63 N.E. 508, the Board of Managers of the State Reformatory transferred prisoners to the penitentiary under the Reformatory Act. The constitutionality of this Act was directly challenged, and as the court stated, the question was whether or not an executive or administrative board had the authority under the legislation in question to transfer said prisoners. The court held that the attempt by the Board of Managers to designate the place of confinement was a usurpation of the judicial power of the court.

In *Cleveland, C.C. & St. L. Ry. Co. v. People ex rel. Barter* (1904), 212 Ill. 638, 72 N.E. 725, the supreme court held that a statute authorizing the tax assessor and county clerk to collect a specific amount as a tax against landowners for failure to clean impediments from streams was

nothing more or less than a penalty or fine which could be inflicted only by the judicial power after trial according to law. The court said at page 641:

"* * * To hold otherwise would be to permit the assessor to levy a penalty and deprive the offender of his property without due process of law * * *. It is no answer to say that the property owner can object to the tax in the county court and there have these questions judicially determined, for the reason that if the assessor has the power to impose the penalty and the county clerk has the power to extend the taxes, there is nothing left for the county court but to overrule the objection, as the question of violation has been previously determined by these officers."

Since the advent of administrative agencies, we find a lessening of the strict separation of powers of the three branches of our government. Certain "quasi judicial" functions have been delegated to administrative agencies. The problem encountered is the line of demarcation between those functions granted administrative agencies that are in fact "quasi judicial" and those functions that are judicial. We do not believe that actual judicial authority can be granted to administrative agencies under the guise of being "quasi judicial" or "ministerial."

We turn then to cases of comparatively recent date. In *Harrison v. Civil Service Com.* (1953), 1 Ill.2d 137, 146-147, 115 N.E.2d 521, the court stated:

"It is readily apparent that section 11 (par. 274) of the Administrative Review Act does not contemplate any such broad powers of review, for it is specifically provided in this provision that the findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct. The court is not authorized to weigh the evidence, nor to make its own independent determination of the facts, as under the statute involved in the *Schoeberlein* case. On the contrary, the type of judicial review authorized under the Administrative Review Act, whereby the court must regard the findings of the agency as *prima facie* correct and is permitted to set them aside only if they are contrary to the manifest weight of the evidence, has traditionally been regarded as a judicial function, comparable to the issue at law as to whether there is competent evidence to support a judgment of a lower court. [Citation.]"

Considering the limitations of the judiciary, the rationale of *West End Savings & Loan Ass'n v. Smith* (1959), 16 Ill.2d 523, 525-526, 158 N.E.2d 608, is that the courts have the power and the duty to determine if administrative findings and orders have support in the evidence, but con-

versely the courts cannot be invested with power to determine and decide matters of an executive or legislative character. At page 525 the court stated:

> "It is a familiar principle of constitutional law that none of the three departments of our government may exercise powers properly belonging to either of the other two. Pursuant to this commandment we have repeatedly held that where authority has been conferred upon administrative agencies to perform functions of an executive nature, provisions for trial *de novo* in courts of law violate the separation-of-powers principle. [Citations.]"

In 1938 the supreme court, in *Department of Finance v. Cohen,* 369 Ill. 510, 17 N.E.2d 327, considered the imposition of a penalty by a ministerial body. The legislature had provided that the Department of Finance could compute a deficiency assessment under the Retailers' Occupational Tax Act. The court, in holding that the computation by the Department of the deficiency was not an exercise of judicial power within the meaning of the constitution, stated in substance, that the agent, in figuring the deficiency, was performing a ministerial act which required merely a mathematical calculation or computation from data upon which all minds must ordinarily reach the same result. As the court stated:

> "The statute sets forth with great detail the matters which must go into the monthly return, and lays down a guide which, when followed, leaves nothing open for arbitrary discretion." 369 Ill. at 516.

It is thus obvious that no judicial discretionary determination of a fine or penalty was considered in that case. The ruling in *Cohen* was cited with approval by the supreme court in *Department of Finance v. Gandolfi* (1940), 375 Ill. 237, 30 N.E.2d 737. In *Gandolfi,* the Department of Finance computed the amount due under the retailers' occupation tax against the defendant to be $1035 as the tax, and $258.75 as penalties. In *Gandolfi,* after stating the substance of the ruling in *Cohen,* the supreme court held that no constitutional judicial power was delegated to the Department of Finance, but that the collection of the statutory tax and statutory penalty requiring merely mathematical calculation was incidental to the duty of administering the law and did not constitute the exercise of judicial power.

However, in *Reid v. Smith* (1940), 375 Ill. 147, 152, 30 N.E.2d 908, 911, the supreme court held that the Department of Labor or the awarding body could not impose a penalty of $10 a day for each laborer not receiving prevailing wages provided for under the prevailing wage law. The supreme court further held that the statutory authority granted to

the awarding body or the Department of Labor was invalid as an attempt to confer judicial power

> "* * * upon such bodies contrary to article 3 of the constitution. [Citations.] The fact that an appeal is provided from the decision of the awarding body or Department of Labor in so declaring a forfeiture, does not justify one department of government exercising powers belonging to another. [Citations.]" (375 Ill. at 152.)

It is to be noted that in *Reid* no discretionary amount was authorized by a flat $10 a day penalty.

It has been uniformly held as stated in *Ford v. Environmental Protection Agency* (1973), 9 Ill.App.3d 711, 717, that the power to suspend, revoke, and otherwise deal with licenses may be delegated to an administrative officer or agency, and as stated above, if there is a penalty incidental thereto and the same is merely a matter of a specified amount or simple calculation, the same may be considered a quasi-judicial act not offensive to the separation of the three powers of our government. Conceding for the moment the constitutional authority of the administrative body, as stated above, the reviewing court in considering the actions of an administrative body must consider the factual findings of that body as *prima facie* correct unless against the manifest weight of the evidence. However, that is not the issue in the case before us. It is pointed out merely to illustrate the limitations upon our review of the actions of the Pollution Control Board. In other words, this reviewing court is performing much the same function in its review of the actions of an administrative agency as it is in the review of the actions of a trial court. If we concede the power to an administrative agency to impose a discretionary fine upon a transgressor before that Board, we have invested all of the possible judicial power upon a ministerial body. The only function of a court not granted to that body is the judicial power to collect the fine imposed and only then does the judicial system appear upon the scene.

The subject of ecology and preservation of our natural resources is a much publicized and emotional issue before the public today. Perhaps as a result thereof, the legislature has provided in the Environmental Protection Act that appeals from the decisions of the Illinois Pollution Control Board shall be directly to the appellate courts to expedite timewise the hearing of pollution cases.

No Illinois case has been cited, nor is there any with which we are familiar, other than the current Third District Appellate Court opinion, *Ford*, cited herein, which holds that an administrative body may hear evidence, determine guilt, and impose a discretionary fine for the violation.

In the case before us, the Environmental Protection Agency asked for a fine of $10,000 against the City of Waukegan. A fine of $1,000 was imposed. One of the members of the Pollution Control Board, not taking part in the hearing, "concurred" and suggested that the fine be doubled to cover the cost. It matters not in the end whether we consider an order for the payment of money a civil or criminal proceeding, nor does it matter if we call it a penalty or a fine. The result is exactly the same.

■■ We believe, with due deference to the opinion of the Appellate Court, Third District, that the granting of power to the Illinois Pollution Control Board to impose a $10,000 fine is an unlawful delegation of the judicial powers to an administrative agency. We further believe that nothing is solved by labeling such a procedure quasi-judicial; nor is this power to fine a mere mathematical calculation on data from which all reasonable minds would reach the same result. The Board here imposed fines of $1,000 and $250. These amounts might have been doubled as one Board member suggested, or they might have been any other amount up to a limit of $10,000. The imposition of a discretionary fine is a distinctly judicial act and one that cannot be exercised by an administrative body. Gradual erosion of the judicial power of the State in favor of administrative bodies endangers our system of government. There is no question but that the Illinois Pollution Control Board may hold hearings and make factual determinations; however, the imposition of a discretionary fine and the collection thereof must necessarily be a matter of judicial determination by a court.

Examination of the statutes pertaining to Public Health in Illinois (Ill. Rev. Stat. 1971, ch. 111½), disclose no fewer than twenty-four penalty provisions relating to violations of the various public health laws of this State ranging from a minimum fine to five years in prison. In not one single instance, except under the Environmental Control Act, is authority granted to the administrative body to impose penalties or fines, and obviously, not imprisonment. The argument that the Environmental Control Act cannot be enforced except by granting to the Pollution Control Board the power to impose fines, appears specious when one considers that such actions are not granted in other acts important to public health.

■■ Moreover, we find sections 1033(b), 1042, and 1044, of the Environmental Control Act, read together, are less than a clear investment of such power in the Board. Section 1033(b) provides that after hearing and due consideration, the Board shall enter a final order which may include "the imposition by the Board of money penalties in accord with Title XII of this Act." Sections 1042 and 1044 are found in Title XII of the Act. It is provided at Section 1042 that any person violating the Act,

regulations or order of the Board, shall be liable to a penalty of not to exceed $10,000 which "may be recovered in a civil action" brought in the name of the People of the State of Illinois by the State's Attorney or the Attorney General. As originally adopted, section 1044 provided, without specifying any penalty, that "it shall be a misdemeanor to violate this Act or regulations thereunder. \* \* \*" Public Act 77-2830, effective January 1, 1973, conforming criminal penalties to the Unified Code of Corrections, amended section 1044 to provide that it shall be a Class A misdemeanor to violate the Act or regulations thereunder. (Ill. Rev. Stat., 1972 Supp., ch. 38, sec. 1005—9—1 provides a maximum fine of $1,000 for Class A misdemeanors.) If for no reason other than the ambiguities or inconsistencies which we believe arise from these sections, we would feel compelled to set aside any fine imposed by the Board.

We therefore reverse and set aside the order of the Pollution Control Board.

ABRAHAMSON, J., concurs.

Mr. JUSTICE SEIDENFELD dissenting:

I would uphold the Board's authority to impose variable monetary penalties, as in *Ford v. Environmental Protection Agency* (3d Dist. 1973), 9 Ill.App.3d 711, 292 N.E.2d 540.

Petitioners do not urge as a separate ground for reversal that the Board's findings were against the manifest weight of the evidence or that the Board acted arbitrarily, capriciously, or otherwise abused its discretion in dealing with them.[1] The sole issue raised is whether section 33(b) of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(b)) violates the separation-of-powers provision of the Illinois constitution.

The Illinois Supreme Court has never specifically held that the ability of an administrative agency to assess a variable monetary penalty necessarily violates the separation of powers restriction. The court has held that the assessment of a wide variety of sanctions by an administrative agency is permissible. (*People ex rel. Rice v. Wilson Oil Co.* (1936), 364 Ill. 406 (fixing of bond penalty); *Department of Finance v. Cohen* (1938), 369 Ill. 510 (deficiency assessment); *Department of Finance v.*

---

[1] Shortly after the refuse disposal activities began the Environmental Protection Agency notified two of the petitioners that they were in violation of the Act and directed them to cease operations, which they did not do. Four months later shortly after the Agency filed a complaint, the city of Waukegan requested a permit for its already accomplished dumping.

*Gandolfi* (1940), 375 Ill. 237 (tax penalty); *Vissering Mercantile Co. v. Annunzio* (1953), 1 Ill.2d 108 (adverse publicity); *Gadlin v. Auditor of Public Accounts* (1953), 414 Ill. 89 (denial of license); *Cermak Club, Inc. v. Illinois Liquor Com.* (1963), 30 Ill.2d 90 (revocation of license).) The cases cited by petitioners, *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. People ex rel. Barter* (1904), 212 Ill. 638, and *Reid v. Smith* (1940), 375 Ill. 147, are distinguishable, as was pointed out by the Third District. *Ford v. Environmental Protection Agency* (1973), 9 Ill. App.3d 711, 715-716, 292 N.E.2d 540, 542-543.

The majority opinion relies on the fact that the fine *is* discretionary. While this may be a factor to consider, as indicated by the language of the cases referred to by the majority, it should not be conclusive. Administrators often exercise judgment and discretion, and investigate, deliberate and decide without exercising judicial power within the meaning of the constitutional restriction dealing with separation of powers. (*Toplis & Harding, Inc. v. Murphy* (1943), 384 Ill. 463, 473.) The danger that administrative discretion may be exercised arbitrarily that exists in fixing the amount of a monetary penalty exists also in apportioning costs of construction of commerce facilities (*Chicago Junction Ry. Co. v. Illinois Commerce Com.* (1952), 412 Ill. 579) or in denying a license to a currency exchange. *Gadlin v. Auditor of Public Accounts* (1953), 414 Ill. 89.

Similarly, it is not altogether realistic to draw the line of discretion short of variable monetary penalties while allowing administrative agencies the freedom to impose non-monetary sanctions or fixed monetary penalties. (See Gellhorn, 1970 Wash. U.L.Q. 265, 271-279; Jaffe, Judicial Control of Administrative Agencies (1965), pp. 112-114; 1 K. Davis, Administrative Law, sec. 2.13 (1958), pp. 134-138.) It may be wiser from a practical viewpoint to enable an administrative agency to fine according to the seriousness of the infraction and other relevant criteria rather than be limited to an all-or-nothing sanction such as revocation of a license. (*Ford v. Environmental Protection Agency* (3d Dist. 1973), 9 Ill.App.3d 711, 718, 292 N.E.2d 540, 545.) On the other hand, the imposition of a non-monetary penalty such as suspension of a license or permit for a period of time to be determined by the administrative agency [2] amounts in effect to a less precise form of a flexible monetary fine. Even with a fixed monetary penalty, administrative discretion as to how many violations to prosecute, which frequently cumulate by days [3] as well as

---

[2] *E.g.,* Ill. Rev. Stat. 1971, ch. 111½, pars. 116.54, 116.90, 170, 185.11.

[3] *E.g.,* Ill. Rev. Stat. 1971, ch. 111½, pars. 155, 729, 1042.

the number of regulations infracted, will determine the ultimate amount of the penalty the violator will have to pay.[4]

The majority opinion takes the position that "actual judicial authority" should not be granted to administrative agencies under the guise of being labelled "quasi-judicial" or "ministerial." However, classification of official duties under the three heads of legislative, executive, and judicial cannot be very exact, and there are many officials whose duties cannot properly, or at least exclusively, be arranged under either of these heads. (*People v. Joyce* (1910), 246 Ill. 124, 135.) Numerous instances can be cited where functions apparently judicial in nature when performed by an administrative body or official do not violate the separation of powers provision of the constitution. See *George v. People* (1897), 167 Ill. 447, 458-464, and instances discussed therein. See also, *e.g.*, *Department of Public Works & Buildings v. Lanter* (1953), 413 Ill. 581 (eminent domain powers); *Chicago Junction Ry. Co. v. Illinois Commerce Com.* (1952), 412 Ill. 579 (apportionment of costs); *Toplis & Harding, Inc. v. Murphy* (1943), 384 Ill. 463 (determination of employment relation); *Grand Trunk Western Ry. v. Industrial Com.* (1920), 291 Ill. 167 (entitlement to workmen's compensation).

Admittedly, possibilities of abuse, discrimination, and capriciousness exist when a penalizer has a choice about the severity of the penalty he will impose. Both courts and legislatures have been reluctant to authorize administrative agencies to impose variable monetary penalties. However, the dangers involved in and the necessity of conferring flexible penalty powers are considerations at first instance and primarily to be carefully weighed by the legislature before choosing to confer such authority. Courts are limited to determining whether the authority conferred is incidental to administering the law (*Cermak Club, Inc. v. Illinois Liquor Com.* (1963), 30 Ill.2d 90, 93; *Gadlin v. Auditor of Public Accounts* (1953), 414 Ill. 89, 97), and whether the administrative agency is invested with arbitrary powers. *Department of Finance v. Cohen* (1938), 369 Ill. 510, 514-515, 516-517; *Kough v. Hoehler* (1952), 413 Ill. 409, 420-421.

Thus the legislature may confer that measure of authority which is practically and reasonably necessary to accomplish the legislative purpose. (*Department of Public Works & Buildings v. Lanter* (1953), 413 Ill. 581, 587, 589-590; *Reif v. Barrett* (1934), 355 Ill. 104, 132-133; *Ford v. Environmental Protection Agency* (3d Dist. 1973), 9 Ill.App.3d 711, 718, 292 N.E.2d 540, 543-544.) A broader delegation of discretionary

---

[4] *E.g.*, *W. J. Dillner Trans. Co. v. Public Utility Com.* (1959), 191 Pa. Super. 136, 155 A.2d 429.

power is justified where it is needed to deal with significant problems involving public health and safety (*Ford v. Environmental Protection Agency* (3d Dist. 1973), 9 Ill.App.3d 711; 292 N.E.2d 540, 543-544; 1 Cooper, State Administrative Law (1965), pp. 36-37, 63, 91.), particularly where there is a need for expertise to deal with a complex area of regulation (*Department of Public Works v. Lanter* (1953), 413 Ill. 581, 586-588, 589-590), or where there is a need for expeditious procedures. *Crowell v. Benson* (1932), 285 U.S. 22, 54, 52 S.Ct. 285, 293-294.

Whether sufficient safeguards and limitations accompany a questioned delegation of authority requires an examination of the entire context in which the conferred authority is exercised. (See *Kough v. Hoehler* (1952), 413 Ill. 409, 420-421; *Toplis & Harding, Inc. v. Murphy* (1943), 384 Ill. 463, 470-473.) Since the true meaning of the doctrine of separation of powers is that the whole power shall not be lodged in the same hands (*Hills v. Relyea* (1966), 34 Ill.2d 552, 557), the most essential check on arbitrary administrative action is meaningful judicial review in which courts make the final determination of lawfulness of agency action. *Crowell v. Benson*, 285 U.S. 22, 54, 52 S.Ct. 285, 293-294 (1932); 1 Cooper, State Administrative Law (1965), p. 17; 1 K. Davis, Administrative Law (1958), sec. 2.10, p. 115; Utton, 7 Nat. Res. J. 599, 603, 626 (April 1967).

I would conclude that the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*) does not confer judicial powers within the meaning of the separation of powers prohibition of the constitution.

The Environmental Protection Act was enacted to provide a consistent state-wide response to serious dangers posed by damage to our environment and to assure that adverse effects upon the environment are borne by those who cause them. (Ill. Rev. Stat. 1971, ch. 111½, pars. 1002, 1008, 1011, 1014, 1020, 1023; *O'Connor v. City of Rockford* (1972), 52 Ill.2d 360, 366.) It cannot be doubted that protection of the environment is both a pervading and urgent problem. Article XI of the 1970 Illinois constitution mandates the legislature to take effective action to deal with threats to the environment. The Record of Proceedings of the Sixth Illinois Constitutional Convention discloses that the framers of the present state constitution in drafting and adopting article XI considered the threat to the environment had reached crisis proportions and wanted the General Assembly to enact effective enforcement procdures in legislation designed to protect the environment from pollution. Verbatim Transcripts, Vol. IV, pp. 2990-2991, 2993, 3000, 3011-3012, 3490-3491; Committee Proposals, Vol. VI, pp. 693-720.

The majority opinion points to other provisions of chapter 111½ of the Revised Statutes that deal with public health to demonstrate that administrative assessment of penalties is not necessary. However, not only is there no constitutional mandate for these other laws, but the absence of a flexible penalty power in those instances perhaps serves to underscore the necessity for conferring such power the legislature must have felt in enacting the Environmental Protection Act. Moreover, the other laws of chapter 111½ generally deal with narrow area (*e.g.*, par. 73.1 *et seq.* (funeral directors and embalmers); par. 128 *et seq.* (stray animals); par. 185.1 *et seq.* (migrant labor camps)) and uncomplicated rules of conduct (*e.g.*, licensing, registration, examination, maintenance of premises).

Without the flexible penalty power, effective administration of the Environmental Protection Act might become difficult if not impossible. (*Ford v. Environmental Protection Agency* (3d Dist. 1973), 7 Ill.App.3d, 292 N.E.2d 540, 545.) Courts are cumbersome, inefficient, and expensive by comparison to streamlined administrative procedures designed to deal specifically and flexibility with one problem-area. Fines imposed by courts would inevitably be inconsistent, whereas the Pollution Control Board with its expertise and centralized jurisdiction could more intelligently and effectively achieve the legislative purpose. See *O'Connor v. City of Rockford* (1972), 52 Ill.2d 360, 366-368.

Limits are placed on the amount of the penalty assessable. (Ill. Rev. Stat. 1971, ch. 111½, par. 1042.) Standards are provided in the Act that must guide Board determinations in enforcement proceedings, which would include determinations as to the amount of the fine imposed. (Ill. Rev. Stat. 1971, ch. 111½, pars. 1033(c), 1002(b), 1020. See *Hill v. Relyea* (1966), 34 Ill.2d 552.) A hearing with procedural safeguards is required at which evidence of violations must be presented. (Ill. Rev. Stat. 1971, ch. 111½, pars. 1031-1033.) Significantly, the investigatory and prosecutorial functions are carried out by one agency (Ill. Rev. Stat. 1971, ch. 111½, pars. 1004, 1030, 1031), while the adjudicatory function is performed by another. (Ill. Rev. Stat. 1971, ch. 111½, pars. 1005, 1031-1033. See 1 Cooper, State Administrative Law (1965), pp. 19-20, 26.) The Board's findings, reasons, and opinion must be published (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(a); *Rockwell Lime Co. v. Commerce Com.* (1970), 373 Ill. 309, 322-323.), and the Board's own rules require written decisions embodying findings, conclusions, and reasons for its decision on all material issues of fact, law, or discretion presented on the record. (PCB Reg. #331(a).) The adherence of the Board to its own rules would apparently require it to justify the amount of the fine imposed in

an enforcement proceeding since this is a discretionary act.[5] Finally, to insure that these safeguards are followed, judicial review pursuant to the Administrative Review Act is available. Ill. Rev. Stat. 1971, ch. 111½, par. 1041.

Section 11 of the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 274) extends administrative review to cover all questions of law and fact presented by the record. The reviewing court may determine whether the Board's actions and authority are constitutional (*Commonwealth Edison Co. v. Pollution Control Board* (1972), 5 Ill.App.3d 800); whether Board actions exceed statutory authority (*Citizens Utilities Co. v. Illinois Pollution Control Board* (1972), 9 Ill.App.3d 158; *A. E. Staley Manufacturing Co. v. Environmental Protection Agency* (4th Dist. 1972), 8 Ill.App.3d 1018, 290 N.E.2d 892); whether the Board has considered only data, opinions, and testimony adduced at the hearing appealed from and in the record (*North Shore Sanitary Dist. v. Pollution Control Board* (1972), 2 Ill.App.3d 797); whether the legislative standards have been properly construed and applied in imposing penalties (*Ford v. Environmental Protection Agency* (3d Dist. 1973), 9 Ill.App. 711, 292 N.E.2d 540); whether the Board's orders are sufficiently certain (*Citizens Utilities Co. v. Illinois Pollution Control Board* (1972), 9 Ill.App.3d 158); and whether the Board's findings and determinations are supported by the evidence. *Seegren v. Environmental Protection Agency* (2d Dist. 1972), 8 Ill.App.3d 1049, 291 N.E.2d 347; *McIntyre v. Pollution Control Board* (3d Dist. 1972), 8 Ill.App.3d 1026, 291 N.E.2d 253; *Wachta v. Pollution Control Board* (1972), 8 Ill.App.3d 436.

The reviewing court has before it the record of proceedings, including findings and reasons in which the violation was found and the penalty fixed. In such circumstances, it is possible, giving due deference to Board discretion, to judge whether the Board properly considered legislative standards, did not consider impermissible bases in fixing the penalty, and did not act arbitrarily or capriciously, or otherwise abuse its discretion in penalizing the violator. Thus if the penalty imposed is clearly unwarranted and excessive the reviewing court may refuse to sanction it, or remand the determination for proper consideration, or only affirm so much of the penalty as is "justified by the record." Ill. Rev. Stat. 1971, ch. 110, par. 275(e)(f) and (g), made applicable to appellate review by Supreme Court Rule 335(h)(2) (Ill. Rev. Stat.

---

[5] The Board in the instant proceeding failed to give reasons for choosing to fine the City of Waukegan $1000 and the remaining petitioners $250 each. However, petitioners do not challenge this deficiency.

1971, ch. 110A, par. 335(h)(2)); *Citizens Utilities Co. v. Illinois Pollution Control Board* (1972), 9 Ill.App.3d 158.

Finally, while not raised by petitioners, the majority felt compelled additionally to hold the statutory authority in question fatally ambiguous. In my view, section 44 (Ill. Rev. Stat. 1971, ch. 111½, par. 1044) dealing with criminal sanctions, clearly is meant to be construed independent of the Board's authority to impose civil sanctions. Section 42 (Ill. Rev. Stat. 1971, ch. 111½, par. 1042) prescribes limits the Board must follow in fixing the penalty and provides for a civil action to collect the penalty after its assessment. In cases of administrative review recovery of the penalty by resort to a separate civil action is unnecessary, since the reviewing court has the power to enter judgment upon which execution may issue if it affirms the Board's determination. Ill. Rev. Stat. 1971, ch. 110, par. 275(h).

The imposition of flexible monetary penalties by the Pollution Control Board can be regarded as a necessary power to achieve an urgent legislative purpose which is sufficiently circumscribed by standards, procedural safeguards, and meaningful judicial review. For these reasons I would not consider section 33(b) of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(b)) violative of the separation of powers provision of the Illinois constitution. I would therefore affirm the Board's order and enter judgment for the amounts specified therein.