INCINERATOR, INC., Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

(No. 56436;

First District (4th Division)—October 17, 1973.

Pederson & Houpt, of Chicago (Richard V. Houpt and Dennis J. Eslick, of counsel), for petitioner.

William J. Scott, Attorney General, of Chicago (Joseph V. Karaganis, Harvey M. Sheldon, Melvyn A. Rieff, and Richard W. Cosby, Assistant Attorneys General, of counsel), for respondents.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

Pursuant to provisions of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*), the petitioner, Incinerator, Inc., appeals from the findings of the Illinois Pollution Control Board which resulted in the petitioner being fined $20,000 for air pollution and $5,000 for failure to comply with certain sections of the Illinois Pollution Control Board Rules and Regulations governing the control of air pollution which required the petitioner file an air contaminant emission reduction program. The petition was also ordered to cease and desist operation until such time as the necessary air pollution abatement equipment is installed on its incinerators.

The issues presented for review are: (1) whether the finding of the Pollution Control Board that the petitioner caused air pollution is against the manifest weight of the evidence; (2) whether the assessment of a $5,000 fine for failure to file an air contaminant emission reduction program is against the manifest weight of the evidence; and (3) whether the Illinois Environmental Protection Act vests the power in the Illinois Pollution Control Board to levy $25,000 in fines against the petitioner.

The petitioner, Incinerator, Inc., operates a municipal-size incinerator plant in Stickney, Illinois, consisting of two large rotary kiln incinerators, each having a capacity of 250 tons of solid waste per day. On April 2, 1970, the Illinois Environmental Protection Agency filed a complaint before the Illinois Pollution Control Board, wherein it alleged:

"(2.) That during the period beginning on or about July 21, 1967 and continuing each day of operation thereafter up to the close of the record herein, respondent has operated its incinerating facilities in such a manner as to cause, threaten, or allow the discharge or emission of particular matter, together with other contaminants, into the environment in Illinois from the incinerator stack and from additional as yet undetermined emission sources within the incinerating facilities and plant, so as to cause or tend to cause air pollution in Illinois, either along or in combination with contaminants from other sources, in violation of the following:

a. From on or about July 21, 1967 to and including June 30, 1970, Section 3 of the 'Air Pollution Control Act,' and thus caused air pollution as defined in Section 2 of said Act and created a public nuisance within Section 3, Ill. Rev. Stat., Ch. 111½, §§ 240.2(a), 240.2(c), 240.3 (1969).

b. From July 1, 1970 and continuing up to the close of the record herein, Section 9(a) of the 'Environmental Protection Act,' and thus caused air pollution as defined in Section 3(b)

of said Act, Ill. Rev. Stat., Ch. 111½, § 1003(b) (Supp. 1970). (3.) That during the period beginning on or about July 21, 1967 and continuing each day of operation thereafter up to the close of the record herein, respondent has operated its incinerating facilities in such a manner as to emit particulate matter in amounts in violation of the provisions of Rule 3—3.232 of The Rules and Regulations Governing the Control of Air Pollution, promulgated by the State of Illinois Air Pollution Control Board, pursuant to Section 5 of the 'Air Pollution Control Act,' Ill. Rev. Stat., Ch. 111½, § 240.5 (1969), and continued in effect by Section 49(c) of the 'Environmental Protection Act,' Ill. Rev. Stat., Ch. 111½, § 1049(c) (Supp. 1970).

(4.) That since June 15, 1967 respondent has to file with either the Technical Secretary of the Air Pollution Control Board or with the Environmental Protection Agency, complainant in this action, a Letter of Intent to file an Air Contaminant Emission Reduction Program in violation of Rule 2—2.12 of the Rules and Regulations Governing the Control of Air Pollution, or since April 15, 1968 an Air Contaminant Emission Reduction Program ('ACERP') in violation of Rules 2—2.31(f) and 2—2.41 of the aforesaid Rules and Regulations, which Rules were promulgated by the Air Pollution Control Board pursuant to Section 5 of the 'Air Pollution Control Act,' Ill. Rev. Stat., Ch. 111½, § 240.5 (1969), and contained in effect by Section 49(c) of the 'Environmental Protection Act,' Ill. Rev. Stat., Ch. 111½, § 1049(c) (Supp. 1970).

(5.) That on or about September 30, 1970 and on or about March 4, 1971 respondent caused or allowed the discharge or emission of smoke from its incinerating facilities, the density or shade of which smoke was No. 2 or darker on the Ringlemann Chart, in violation of Rule 3—3.232 (Smoke) of the Rules and Regulations Governing the Control of Air Pollution, promulgated pursuant to Section 5 of the 'Air Pollution Control Act,' Ill. Rev. Stat., Ch. 111½, § 240.5 (1969), and contained in affect by Section 49(c) of the 'Environmental Protection act,' Ill. Rev. Stat., Ch. 111½, § 1049(c) (Supp. 1970)."

After being served with this complaint, the petitioner filed a petition for variance before the Pollution Control Board and both proceedings were consolidated into a single hearing. Thereafter, on June 1, 1971, the petitioner filed an answer to the Environmental Protection Agency's complaint. In its answer, the petitioner denied causing the air pollution as alleged but admitted its failure to comply with the Pollution Control

Board's Rules and Regulations which required the filing of an air contaminant emission reduction program. The petitioner, however, did plead an affirmative defense wherein its was stated that the compliance required by the Environmental Protection Agency was "technologically infeasible as the available pollution control equipment had yet proven to be effectively adaptable to this or similar installations."

The Pollution Control Board subsequently held extensive hearings wherein testimony from numerous sources was heard. In support of the complaint filed with the Pollution Control Board, the Environmental Protection Agency presented the testimony of three investigators. The first investigator, Michael Longo, testified he is the chief pollution control investigator for the town of Cicero, Illinois. In January, 1967, he began investigations of the petitioner because of many complaints from residents in the south end of the community about flyash, smoke emissions and odors emanating from the smokestacks of the petitioner's plant. These complaints, Longo testified, were in letter form and were later presented as exhibits by the Environmental Protection Agency. Longo further testified to four specific occasions on which he personally observed dark smoke emissions and soot coming from the petitioner's smokestack.

The second investigator who testified for the Environmental Protection Agency was David Rosenbaum, the Chief Investigator for the Environmental Control Division of the Illinois Attorney General's office. Mr. Rosenbaum stated he was certified by the Federal Administration Air Pollution Control Board to make readings of visible smoke emissions. As to the smoke emission from the petitioner's smokestack, Rosenbaum testified he had observed smoke emission of heavy intensity on at least one occasion but had not taken an exact reading as to the intensity.

The third investigator to appear at the hearings was William Zenisek, an Environmental Control Engineer for the State of Illinois Environmental Protection Agency. Mr. Zenisek testified he was certified by the Federal Government as a smoke observer. Moreover, Zenisek testified he visited the petitioner's plant for an inspection on September 16, 1970, following the receipt of a complaint filed with the Environmental Protection Agency by the town of Cicero. Zenisek said he made subsequent visits to the plant regarding smoke emission on February 26, 1971, and June 11, 1971. In addition to his three visits to the petitioner's plant, Zenisek testified he also estimated the density of heavy smoke emissions coming from the petitioner's smokestacks on both September 30, 1970, and March 4, 1971. Finally, based upon a document presented by Incinerator, Inc., and certain printed articles, all of which were presented as exhibits during the hearing, Mr. Zenisek testified he made extensive computations which revealed the petitioner's smokestacks were

causing air pollution by emitting particulate matter at the rate of 0.66 or 0.67 grains per standard cubic foot corrected to 50% excess air, well above the Illinois emission standard which allowed 0.2 grains per standard cubic foot.

The Environmental Protection Agency also presented thirteen residents of the vicinity of the Incinerator, Inc., plant who testified in support of the Environmental Protection Agency's contention that the petitioner was emanating smoke, soot and particulate matter continually to the extent that the use and enjoyment of their property was impaired. Several of the witnesses also testified to noxious odors emanating from the petitioner's plant.

Incinerator, Inc., presented as its first witness, Charles Velzy, an engineer specializing in incineration and air pollution control. Velzy testified as to air pollution control devices which are in use or could be put to use on incinerators similar to the petitioner's. His testimony was quite extensive in reviewing a number of different air pollution control systems. In conclusion, Velzy testified technology had not kept pace with the more stringent air pollution emission standards of recent years and, as such, only in recent months had an air pollution control system become available which could reasonably assure functional operations of an incinerator like the petitioner's in complying with the State of Illinois air pollution emission standards.

On cross-examination, Velzy admitted air pollution control equipment has been available since before 1967, the year the Environmental Protection Agency's complaint against the petitioner arose, but only recently has data been presented to prove the effectiveness of such equipment in terms of code compliance.

The second witness presented by the petitioner was Elmer Kaiser, also an engineer specializing in the field of incinerators and air pollution control equipment. Mr. Kaiser likewise testified in great detail as to both the adaptation and availability of various types of air pollution control devices in use on large incinerators throughout the country. Mr. Kaiser stated that, disregarding any questions of cost or reliability of performance, there are presently available air pollution control devices efficient enough to meet the existing Illinois air pollution emission standards. He stated further the major problem such devices presented was in judging reliability of their performance by means of a given test method or methods. According to the method he favored using, there was not just yet enough information available to evaluate the efficiency of existing control equipment.

The petitioner next presented Thomas Rosenberg, sales manager for the International Incinerator Co., who discussed the air pollution control

equipment in use at each of its eleven rotary kiln incinerators in operation in the United States. In discussing the air pollution control equipment in use at these facilities, Rosenberg described in detail the difficulties each experienced in combatting the problem of corrosion which rapidly destroyed the air pollution equipment. On cross-examination, Rosenberg stated that in 1967 or 1968, he had been in contact with the petitioner concerning the availability of air pollution control equipment for its plant, but at that time he was unable to make any positive recommendation regarding available air pollution control equipment.

The manager of the petitioner's plant, Harry Huizenga, next detailed the types of air pollution control equipment in use by the petitioner from 1966 to the date of the hearing. He also testified as to discussions which culminated in 1971 in a $1.7 million contract with Dow Chemical Company for air pollution control equipment. This contract was later rejected because Dow would neither provide a warranty nor guarantee the system would comply with present air pollution emission requirements. Huizenga also testified the petitioner, as was previously admitted by stipulation, did receive a request from the State of Illinois for a letter of intent to file an air contaminant emission reduction program some time in 1969. He stated the petitioner did not file a letter of intent because every time an air pollution control device was found which the petitioner thought would solve the problem, the device would encounter serious operational difficulties caused by the incinerator which was using it.

On cross-examination, Mr. Huizenga indicated he was aware of the existence of air pollution control equipment available in past years which had a high efficiency rate. However, he repeated his contention that operational problems, particularly corrosion, hindered the efficiency rate. He stated this was exemplified by the refusal of the manufacturers of such equipment to guarantee the effective performance of their equipment to the point of meeting the existing air pollution emission standards once installed.

Following the hearings, the Illinois Pollution Control Board found the alleged violations to have occurred and ordered Incinerator, Inc., to cease and desist operations until such time as equipment can be installed to abate the air pollution nuisance which was found to be continuing. The Board also denied the petitioner's petition for variance and imposed fines on Incinerator, Inc., of $20,000 for air pollution and $5,000 for failure to file an air contaminant emission reduction program with the State.

The first issue presented for review is whether the finding of the Pollution Control Board that Incinerator, Inc., caused air pollution is against the manifest weight of the evidence.

The petitioner contends the finding of the Pollution Control Board that the petitioner caused air pollution from June, 1967, to the close of the record is against the manifest weight of the evidence because the Environmental Protection Agency not only failed to present competent, admissible evidence to prove the alleged air pollution violations, but also failed to prove the existence of economically feasible technology to reduce air pollution. In support of its contention that the Environmental Protection Agency did not substantiate the allegations set out in its complaint, the petitioner urges this court to review the extensive record of the hearing held by the Pollution Control Board dealing with the distinct allegations of the complaint, namely, the allegations pertaining to smoke violations and particulate emission violations. As to the alleged smoke violations, the petitioner contends the testimony presented by the Environmental Protection Agency's three expert witnesses reflects that the witnesses did not monitor the smoke emissions from the petitioner's plant in the manner prescribed by the Rules and Regulations Governing the Control of Air Pollution originally promulgated by the Air Pollution Control Board and later adopted by the Pollution Control Board. More specifically, the petitioner contends the expert witnesses either failed to monitor the smoke emissions using the Ringlemann Chart published by the Bureau of Mines of the United States Department of Interior, or failed to comply with the proper manner of smoke reading when using the Ringlemann Chart. In light of these omissions, the petitioner argues the testimony of the expert witnesses is neither credible nor admissible.

As to the alleged particulate emission violations, the petitioner asserts only one of the Environmental Protection Agency's expert witnesses, William Zenisek, even testified in reference to the alleged violations. Moreover, the petitioner attempts to show that Mr. Zenisek's testimony was incompetent since the figures used by Mr. Zenisek in his comparative analysis of the petitioner's alleged particulate emissions were never shown to be applicable to the petitioner's incinerator.

The petitioner also asserts section 33(c) of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(c) ) requires the Environmental Protection Agency to prove the existence of economically feasible technology to reduce the air pollution prior to a finding by the Pollution Control Board that any alleged air pollution violations have occurred. Since such a showing, in the opinion of the petitioner, was never made, the petitioner contends the finding of the Pollution Control Board that air pollution violations existed is without merit.

■■ Initially, it must be noted that the written record in the instant case, together with its accompanying exhibits, is both extensive and technical. A thorough review of the record reflects the petitioner's con-

tention that the manifest weight of the evidence is against the finding of the Pollution Control Board that air pollution occurred, is not well taken. As to both the alleged smoke violations and particulate emission violations, the testimony of the expert witnesses representing the Environmental Protection Agency stands unrefuted. Moreover, the experts' testimony is more than substantiated by the numerous residents of the neighborhood surrounding the petitioner's incinerator concerning both smoke violations and particulate emissions. Although the testimony of such witnesses is not based on the scientific comparative analysis of the Environmental Protection Agency's expert witnesses, it does reflect that all who testified presented testimony of relevant probative value since all observed dense smoke emanating from the petitioner's plant on numerous occasions, and all had also suffered substantial and continued interference to both their lives and property in the form of noxious odors and flyash which originated at the petitioner's plant. For these reasons, we necessarily find the judgment of the Pollution Control Board to be supported by substantial evidence in the record.

As to the petitioner's contention that economically feasible technology did not exist to eliminate the alleged air pollution, the record reflects that such contention is likewise not supported by the evidence. On cross-examination, the petitioner's own expert witnesses admitted economically feasible technology not only existed but also was in use on incinerators in the United States similar to the petitioner's incinerator. Since such testimony was presented to the Pollution Control Board, we can only conclude that the Board acted in compliance with section 33(c) of the Environmental Protection Act and considered such testimony in reaching its decision. This is all that is required by section 33(c), which states in part:

"In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved including, but not limited to: * * *. (iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source."

The second issue presented for review is whether the assessment of a $5,000 fine for failure to file an air contaminant emission reduction program is against the manifest weight of the evidence.

■■ Rather than enter a lengthy summary of the petitioner's argument in support of the above contention, this court takes notice of the answer filed on June 1, 1971, by the petitioner to the Environmental Protection Agency's complaint, wherein the petitioner admitted its failure to com-

ply with the Pollution Control Board's Rules and Regulations which required the filing of an air contaminant emission program. In view of this admission, we find no reason to entertain the petitioner's contention that the Pollution Control Board's finding is against the manifest weight of the evidence.

The final issue presented for review is whether the Illinois Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*) vests the power to levy $25,000 in fines against the petitioner.

The petitioner, in light of conflicting decisions which have recently been handed down in both the Second and Third Appellate Districts, asks this court to determine whether the Environmental Protection Act vests the power to levy any form of monetary penalty against a party who has been found by the Pollution Control Board to be in violation of the provisions set forth in the Act. More specifically, the petitioner asks this court to adopt the holding in *City of Waukegan v. Environmental Protection Agency* (1973), 11 Ill.App.3d 189, 296 N.E.2d 102, wherein the Second Appellate District found the Environmental Protection Act does not vest the power to impose monetary penalties in the Pollution Control Board since such action constitutes an unlawful delegation of judicial power by a legislative body.

■■ Although we recognize there is presently a conflict between the holdings in the Second and Third Appellate Districts as to the question of whether the Environmental Protection Act vests the power to levy fines in the Pollution Control Board, we cannot accept the petitioner's position, neither can we agree with the holding by the Second District in *City of Waukegan v. Environmental Protection Agency, supra.* Moreover, we do not view the power vested in the Pollution Control Board as presenting the grave constitutional crisis which the petitioner would have this court believe. Rather, we agree with the decision of the Third Appellate District in *Ford v. Environmental Protection Agency,* (1973) 9 Ill.App.3d 711, 292 N.E.2d 540, which upholds the powers vested in the Act. The basis for such decision is very amply set forth when the court states:

> "Although the essentially legislative and judicial powers cannot be delegated, we believe it implicit in the authorities that where direct or immediate judicial action is inexpedient or impractical, quasi-judicial functions may be conferred upon and exercised by an administrative agency, provided the laws conferring such powers are complete in their content; are designed to serve a general public purpose; are such as to require a consistent and immediate administration; and further provide that all administrative acts are subject to judicial review."

Since the Act involved herein fulfills all of the above purposes, as well as affording a party, such as the petitioner, judicial review, even though such review is by an appellate tribunal, we reject the petitioner's contention that the Environmental Protection Act improperly and unconstitutionally vests the power to levy fines in the Pollution Control Board.

For the reasons stated herein, the order of the Illinois Pollution Control Board is affirmed.

Affirmed.

ADESKO and JOHNSON, JJ., concur.