GEORGE E. HOFFMAN & SONS, INC., Petitioner, v. THE POLLUTION CONTROL BOARD et al., Respondents.

(No. 73-8;

Third District—December 28, 1973.

*Rehearing denied January 23, 1974.*

Michael Gard, of Peoria, for appellant.

Prescott Bloom, of Peoria, for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is a petition for review of an order of the Pollution Control Board (PCB) finding petitioner, George E. Hoffman & Sons, Inc., guilty of violation of the Environmental Protection Act of 1970 pursuant to a complaint filed by the Environmental Protection Agency (EPA). The Board assessed a penalty of $4,000 against petitioner resulting in this petition for review of the penalty assessed and the underlying findings of the Board. The complaint related to Hoffman's operation of its mobile asphalt plant at two locations, one at Little America, Fulton County, and one at Princeville, Peoria County, Illinois during the years 1970 and 1971.

On this appeal petitioner contends: one, the Board lost jurisdiction to consider the complaint filed by the EPA because the controversy was not set for hearing within 60 days after its filing as required by the rules of the PCB; two, the authority of the PCB to assess penalties for violations of the Act is unconstitutional because in conflict with the separation of powers between the legislative, executive and judicial branches of the State government required by the constitution; three, the finding of the Board regarding petitioner's wrongful discharge of particulates into the air from its asphalt plant is contrary to the evidence; and four, the penalty of $4,000 is unreasonable and excessive.

Procedural Rule 307(a) of the PCB provides in part:

"307 Notice of Hearing. (a) The Hearing Officer after appropriate consultation with the parties, shall set a time and place for hearing which date shall be not later than 60 days after the filing of the complaint. * * *"

Procedural Rule 307(c) of the PCB states:

"(c) Failure to comply with the notice requirements of this section may not be used as defense to an enforcement action, but any person to whom notice should have been given may have the hear-

ing postponed if prejudice is shown, upon motion to the Hearing Officer."

The EPA filed its complaint against petitioner on October 1, 1971, and the notice of hearing date was set by the hearing officer on December 6, 1971, more than 60 days subsequent to the filing of the complaint. Petitioner moved to dismiss the complaint because of the lack of timely notice but the motion was denied by the PCB.

■■ Although the language of Procedural Rule 307(a) appears to be mandatory, no particular consequences are specified for failure to set the case for hearing within the required time and, even though we believe the rules of the Board should be complied with, we agree the failure ought not to result in a dismissal of the complaint. The language of Procedural Rule 307(c), by necessary implication, indicates the hearing date is not jurisdictional since, where proper notice is not given, the hearing is continued rather than resulting in a dismissal of the complaint. We hold the failure to give notice did not result in the loss of jurisdiction by the Board to consider the merits of the complaint.

Petitioner's next contention—that the power vested in the PCB to assess penalties is unconstitutional—raises a question which was previously decided by this court adversely to the claim of petitioner in *Ford v. Environmental Protection Agency*, 9 Ill.App.3d 711, 292 N.E.2d 540. We adhere to the rule in the *Ford* case even though the same result has not been reached by other panels of the Appellate Court. (See *City of Waukegan v. Environmental Protection Agency*, 11 Ill.App.3d 189, 296 N.E.2d 102.) However, resolution of this issue is presently pending before the Illinois Supreme Court and the ultimate result in this case on this issue will depend upon the future disposition by the Illinois Supreme Court. We believe no useful purpose would be served by any further discussion of this issue.

This brings us to the major issue presented on this appeal. Is the finding of the PCB that the defendant violated Rule 3—3.111 (process weight limitations) supported by sufficient evidence?

Three of the charges alleged that the petitioner had failed to secure proper permits. At the hearing before the PCB these three charges were admitted by petitioner and no questions are raised concerning these charges on this appeal. Petitioner did, however, before the Board, attempt to mitigate the degree of culpability which should be assessed against its failure to secure permits. After the hearings were concluded, the PCB found that one of the remaining charges relating to air pollution while the plant was being operated at Princeville, Illinois had not been proven.

However, the Board did find petitioner guilty of the remaining charge.

This charge was that since July 1, 1970, it operated its plant in violation of the process weight limitations of Rule 3—3.111. It is this charge of violation and the court's finding thereon that is the principal subject of this appeal, the petitioner asserting the evidence is insufficient to support the finding of violation.

Regulation 3—3.111, the regulation alleged to have been violated provides:

"Limitations for Processes.

Particulate matter emissions from any process shall be limited by process weight in accordance with Table 1 of Chapter III except as provided in Rule 3—3.300, or as provided by separate regulations for specific processes under Rule 3—3.200. Emissions from combustion for indirect heating shall be regulated by Rule 3—3.112."

This is a regulation adopted by the Air Pollution Control Board of the State of Illinois in 1965 and thereafter amended, which regulations were in effect July 1, 1970 when the present Environmental Protection Act became effective and by interim order of the Environmental Protection Agency continued in effect until new regulations were adopted in 1972 by the Agency. The prior regulations adopted by the Air Pollution Control Board were in effect during the period referred to in the complaint and at the time the complaint was filed.

Regulation 3—3, the general section in which the section violated is a subsection, is titled "Emission Standards for New Equipment". Section 3—3.000 provides:

"The emission standards set forth in this section shall be applicable to all new equipment capable of emitting one or more air contaminants to the atmosphere. These standards should be understood to be operating or performance standards, not design standards."

The general context in which regulation 3—3.111 appears has been referred to in order to determine the meaning of the regulation alleged to have been violated and indeed to ascertain what is proscribed by the regulation.

As noted above, the complaint charged only that the petitioner operated the plant in violation of regulation 3—3.111 subsequent to July 1, 1970. It can be seen that no date of violation was specified, and the complainant in its brief insists that as long as it proves the plan operated at sometime during the period, the regulation is violated because the plant was capable of a discharge of particulates in excess of the amounts specified, such capability being determined by standard emission factor tables published for the particular equipment involved. Consistent with

such argument, the complainant made no effort to prove any particular amount of particulate discharge or any actual rate of operation of the plant.

At the hearing the evidence offered by the complainant consisted primarily of the testimony of one of its agents who knew or had seen the plant operating and expert testimony regarding certain tables. The tables reflected the average performance of specific equipment and in particular the average emission discharge under various alternative conditions. From such tables, which are referred to as standard emission factors, it appeared that a Heatherington & Berner mobile-type asphalt plant, Model No. 1770, when operated at its rated imput capacity, would under ordinary circumstances produce an average particulate emission in excess of that being described as allowable under regulation 3—3.111. It appears from the Board's order that the standard emission factors appearing on this table were the principal if not the only evidence relied upon in determining a violation had occurred.

. Before considering the effect of such evidence, it should be noted that regulation 3—3.113 provides:

"Source Emission Measurement

Measurement of emissions of particulate matter from a particular source will be made according to the procedures recommended in the ASME Power Test Code 27—1957, or other procedures approved by the Technical Secretary, and generally accepted by persons knowledgeable in the state of the art."

On this appeal petitioner argues first, the tables do not represent "* * * other procedures approved by the Technical Secretary * * *" and second, even if the use of standard emission factors represented by the tables were generally accepted or used by those knowledgeable in the art, they were inappropriate for the purpose used.

The complainant concedes the procedures were not approved by the Technical Secretary but insists the procedures represented by standard emission tables were generally acceptable and constituted sufficient evidence to support the Board's order.

It may well be that the approval of the procedure by the Technical Secretary is one of those regulations which was carried over from the previous regulatory agency which did not conform to the administrative system of the present regulatory agency and consequently its implementation was abandoned. Nevertheless, it was an effective interim regulation which should have been complied with. We do not believe that an agency is or should be free to decide which of its own regulations it will follow and which ones it will ignore. However, we find it unnecessary to determine the effect of the failure to secure approval of the procedure

because in our opinion the procedure itself is insufficient to support the finding of the Board.

In considering the nature of the emission tables, the question arises as to what is being proscribed by regulation 3—3.111. It seems to us that regulation 3—3.111 is at best ambiguous and may be interpreted in two ways. First, since the subsection is part of the general section relating to specifications for new equipment, the specifications or standards imposed by the section are merely intended to describe the characteristics of the equipment which must exist before a permit for its construction and erection may be applied for and issued. If so, the regulation does not purport to establish any duty that can be violated except the failure to secure a permit as provided in other sections of the regulations for the erection and construction of the plant. Second, the section may be deemed to establish a standard to be applied in determining whether there is actual pollution or an actual discharge of particulate in excess of that allowed for the process involved. If actual pollution is intended to be proscribed by this regulation then the evidence of the emission tables is insufficient to support the finding of violation since it is clear from the Board's own opinion that actual pollution was not proven.

■■■ We are unable to agree with the Agency that the regulation proscribes the mere operation of the asphalt plant at any or all levels of input merely because, as shown by tables of average or estimated projections, the plant is potentially capable of producing impermissibly high levels of particulate discharge. Consistent with our views on this subject, we also reject the Agency's contention that once such tables are introduced it then becomes the burden of petitioner to prove it was not violating the regulation. Requiring the petitioner to assume such a burden is, we believe, not supported by the regulations, is ambiguous in light of the regulation itself and is of doubtful propriety in view of the nature of the sanctions which the Board is authorized to impose.

In accord with the foregoing reasons, we believe the order of the Pollution Control Board finding that the petitioner violated regulation 3—3.111 is not supported by the evidence and the order in this regard is vacated. To the extent the order finds that petitioner failed to secure proper permits, the order is approved but since the penalty was assessed based at least in part on an erroneous finding of a violation, the penalty is vacated and the cause is remanded for further consideration and determination of an appropriate penalty.

Order approved in part, vacated in part and remanded with directions.

ALLOY and DIXON, JJ., concur.